PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYMANTEC CORP., a Delaware Corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant Symantec Corporation. ("Defendant" or "Symantec") and alleges as follows:

## THE PARTIES

1.      Finjan is a Delaware corporation, with its principal place of business at 333 Middlefield Road, Suite 110, Menlo Park, CA 94025.  Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.      Symantec is a Delaware corporation with its corporate headquarters at 350 Ellis Street, Mountain View, California 94043.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq.*  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District.  Currently, Symantec is availing itself of the jurisdiction of Northern California in the *Symantec v. RPost Holdings, Inc. et. al*, 3:14-cv-00238, case.  In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

6.      Pursuant to Civil Local Rule 3-2(c), Intellectual Property actions are assigned on a district-wide basis.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

## FINJAN'S INNOVATIONS

7.     Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

8.     Finjan built and sold software, including APIs, and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues.

9.     Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.:_____

10.     On July 13, 2010, U.S. Patent No. 7,756,996 ("the '996 Patent"), entitled EMBEDDING MANAGEMENT DATA WITHIN HTTP MESSAGES, was issued to Shlomo Touboul.  A true and correct copy of the '996 Patent is attached to this Complaint as Exhibit 1 and is incorporated by reference herein.

11.     All rights, title, and interest in the '996 Patent have been assigned to Finjan, who is the sole owner of the '996 Patent.  Finjan has been the sole owner of the '996 Patent since its issuance.

12.     The '996 Patent generally covers a system and method for embedding messages within HTTP streams.  The claims generally cover inserting non-HTTP management data from a management server, which is intended for at least one client computer, and sending that non-HTTP management data embedded within an HTTP message through a gateway (or proxy) computer to at least one client computer.

13.     On July 13, 2010, U.S. Patent No. 7,757,289 ("the '289 Patent"), entitled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '289 Patent is attached to this Complaint as Exhibit 2 and is incorporated by reference herein.

14.     All rights, title, and interest in the '289 Patent have been assigned to Finjan, who is the sole owner of the '289 Patent.  Finjan has been the sole owner of the '289 Patent since its issuance.

15.     The '289 Patent generally covers a system and method for inspecting dynamically generated executable code.  The claims generally cover receiving content with an original call function and replacing the original call function with a substitute call function, and then determining whether it is safe to invoke the original call function.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

16.     On April 19, 2011, U.S. Patent No. 7,930,299 ("the '299 Patent"), entitled SYSTEM AND METHOD FOR APPENDING SECURITY INFORMATION TO SEARCH ENGINE RESULTS, was issued to Yuval Ben-Itzhak and Limor Elbaz.  A true and correct copy of the '299 Patent is attached to this Complaint as Exhibit 3 and is incorporated by reference herein.

17.     All rights, title, and interest in the '299 Patent have been assigned to Finjan, who is the sole owner of the '299 Patent.  Finjan has been the sole owner of the '299 Patent since its issuance.

18.     The '299 Patent generally covers a system and method for appending security information to search engine results.  The claims generally cover a search request generating results for which a content scanner assesses potential security risks, resulting in a combined security and results summary.

19.     On September 6, 2011, U.S. Patent No. 8,015,182 ("the '182 Patent"), entitled SYSTEM AND METHOD FOR APPENDING SECURITY INFORMATION TO SEARCH ENGINE RESULTS, was issued to Yuval Ben-Itzhak and Limor Elbaz.  A true and correct copy of the '182 Patent is attached to this Complaint as Exhibit 4 and is incorporated by reference herein.

20.     All rights, title, and interest in the '182 Patent have been assigned to Finjan, who is the sole owner of the '182 Patent.  Finjan has been the sole owner of the '182 Patent since its issuance.

21.     The '182 Patent generally covers a system for appending security information to search engine results.  The claims generally require a search engine for locating web content, a client computer for issuing a search request, and a content security scanner to assess potential security risks.

22.     On March 20, 2012, U.S. Patent No. 8,141,154 ("the '154 Patent"), entitled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was

4

issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '154 Patent is attached to this Complaint as Exhibit 5 and is incorporated by reference herein.

23.    All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent.  Finjan has been the sole owner of the '154 Patent since its issuance.

24.    The '154 Patent is generally directed towards a gateway computer for protecting a client computer from dynamically generated malicious content.  One way this is accomplished is to use a content processor to process a first function and invoke a second function if a security computer indicates that it is safe to invoke the second function.

**Symantec**

25.    Symantec makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize Browser Intrusion Prevention System, Insight, Disarm, Norton Safe Web, Norton Safe Search and Symantec Endpoint Manager, including without limitation on Messaging Gateway, Message Gateway for Service Providers, Message Gateway Small Business Edition, Symantec Endpoint Protection, Symantec Endpoint Protection Small Business Edition, Network Access Control, Norton Internet Security, Norton Anti-Virus, Norton 360, and Safe-Web Lite.

26.    Symantec operates roughly in three segments, which are:  User Productivity & Protection, Information Security, and Information Management.  Symantec's User Productivity & Protection segment sells products that are under the "Norton" brand name and are directed towards individuals and home businesses.  Symantec's User Productivity & Protection segment also sells under the Symantec brand name, which is directed mainly toward enterprise and small/medium business customers.  Symantec's Information Security segment sells products that provide SSL certificates, mail and web security, data center security, data loss prevention and information security

5

services offerings.  Symantec's Information Management segment focuses on backup, recovery and electronic discovery.

**Insight with SONAR**

27.     Symantec Insight, also known as Cloud Scan, uses reputation technology to track many files from numerous systems to identify new threats as they are created.  Insight analyzes the source of files, the age of files, and other security metrics such as how the file may be associated with malware and changing encryption and mutating code.  Symantec products leverage Insight to make decisions about files and applications.  Malware, Virus and Spyware Protection includes a feature called Download Insight, which relies on the Insight information to make decisions about files. Download Insight is an Auto-Protect feature which examines files that users try to download through Web browsers, text messaging clients and other portals. Symantec Online Network for Advanced Response (SONAR) 4.0 and later proactively detects new threats based on their behaviors.  SONAR examines programs as they run, potentially injecting code into applications.  SONAR leverages Insight in order to address Advanced Persistent Threats, which operate through drive-by downloads and malware:



*See* http://www.symantec.com/connect/sites/default/files/Insight_and_SONAR_factsheet_US.pdf, a true and correct copy of which is attached hereto as Exhibit 6.

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.:_____

**Norton Safe Web / Safe Search**

28.     Norton Safe Web checks whether a website is malicious before one visits the website and rates it.  In order to rate websites, Norton Safe Web performs analysis using signature-based file scanning, intrusion detection engines, behavioral detection and install/uninstall analysis to identify security risks such as phishing sites, malicious downloads, browser exploits and links to unsafe external sites.  Norton's Safe Web will annotate search results from Google, Yahoo and Bing. Norton's Safe Web product also has an element called Safe Search that is in the Norton Tool Bar. Safe Search uses the ask.com search engine to deliver search results in a custom search environment created by Norton while also appending the search results as is done with Safe Web.  Over 40 million computer desktops use Norton Safe Web.  Below is a depiction of Norton Safe Web:



COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

*See* http://us.norton.com/products/toolbar/tutorials/tutorials.jsp?pvid=n360v3, a true and correct copy of which is attached hereto as Exhibit 7.

**Disarm**

29.     Disarm is a Symantec Messaging Gateway technology that locates and removes potentially malicious content from email attachments.  Disarm scans both inbound and outbound messages for Microsoft Office and Adobe PDF attachments that may contain malicious content.  Malicious content includes macros, scripts, Flash content, and other exploitable content.  Disarm will deconstruct the attachment, remove any potentially malicious content and reconstruct the documents.  Disarm is implemented as an extension of Symantec's Messaging Gateway's day-zero detection feature.

**Symantec Endpoint Protection Manager**

30.     Symantec Endpoint Protection Manger communicates with endpoint clients in order to establish and enforce security policies, manage the deployment and configuration of antivirus protection, manage the updating and reporting of antivirus, and manage the endpoint intrusion prevention and firewall protection.

**SYMANTEC'S INFRINGEMENT OF FINJAN'S PATENTS**

31.     Defendant has been and is now infringing, literally or under the doctrine of equivalents, the '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, and the '154 Patent, (collectively "the Patents-In-Suit") in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed systems and methods that utilize SONAR with Insight, Disarm, Norton Safe Web, Norton Safe Search and Symantec Endpoint Protection Manager, including without limitation on  Messaging Gateway, Message Gateway for Service Providers, Message Gateway Small Business Edition, Symantec

8

Endpoint Protection, Symantec Endpoint Protection Small Business Edition, Network Access Control, Norton Internet Security, Norton Anti-Virus, Norton 360, and Safe-Web Lite.

32.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, Defendant indirectly infringes the '996 Patent, the '289 Patent, and the '299 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, users and developers, to perform the steps of the method claims of these patents, either literally or under the doctrine of equivalents.

33.     In addition to directly infringing the '182 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, Defendant indirectly infringes the '182 Patent pursuant to 35 U.S.C. § 271(c) by selling a material component of a patented machine or apparatus for use in practicing the claims of the '182 Patent, either literally or under the doctrine of equivalents, by its customers, users and developers, and especially adapted for use in an infringement of the '182 Patent.

## COUNT I
### (Direct Infringement of the '996 Patent pursuant to 35 U.S.C. § 271(a))

34.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

35.     Defendant has infringed and continues to infringe one or more claims of the '996 Patent in violation of 35 U.S.C. § 271(a).

36.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

37.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

38.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Symantec Endpoint Protection Manager, which embodies the patented invention of the '996 Patent.

39.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

40.     Defendant's infringement of the '996 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

41.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '996 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II
### (Indirect Infringement of the '996 Patent pursuant to 35 U.S.C. § 271(b))

42.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

43.     Defendant has induced and continues to induce infringement of at least claims 4-6 of the '996 Patent under 35 U.S.C. § 271(b).

44.     In addition to directly infringing the '996 Patent, Defendant indirectly infringes the '996 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

but not limited to its customers, users and developers, to perform the method claims of the '996 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '996 Patent.

45.     Defendant knowingly and actively aided and abetted the direct infringement of the '996 Patent by instructing and encouraging its customers, users and developers to use Symantec Endpoint Protection Manager.  Such instructions and encouragement include but are not limited to, advising third parties to use the Symantec Endpoint Protection Manager in an infringing manner, providing a mechanism through which third parties may infringe the '996 Patent, specifically through the use of the Symantec Endpoint Protection Manager, advertising and promoting the use of the Symantec Endpoint Protection Manager in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Symantec Endpoint Protection Manager in an infringing manner.

46.     Symantec regularly updates and maintains the Technical Support & Symantec Connect webpages to provide demonstration, instructions, and technical assistance to users to help them use the Symantec Endpoint Protection Manager, including:

- Providing troubleshooting for issues involving Symantec Endpoint Protection Manager.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH160964, a true and correct copy of which is attached hereto as Exhibit 8;

- Providing instruction on using and updating Symantec Endpoint Protection Manager.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH214866, a true and correct copy of which is attached hereto as Exhibit 9;

- Informing users on the best practices to apply and learn about Symantec Endpoint Protection Manager.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH134367&actp=search&viewlocale=en_US&searchid=1400713321997, a true and correct copy of which is attached hereto as Exhibit 10.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

47. Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings. *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 11.

48. Symantec provides and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings. *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 12.

49. Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products. *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 13; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 14.

50. Symantec maintains and promotes the Symantec Partner Program to encourage and expand use of the Symantec Endpoint Protection Manager by offering up-to-date training and certification enabled by a full curriculum of courses in order to increase skills and competency with reselling the Symantec products. *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached hereto as Exhibit 15.

51. Symantec maintains and promotes the Symantec University for Partners which offers training, credentials and certification programs for the Symantec products. *See* http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached hereto as Exhibit 16.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

52.     Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products.  *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 17.

53.     Defendant has had knowledge of the '996 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '996 Patent.

54.     On information and belief, Defendant had knowledge of the '996 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.  On information and belief, Defendant had knowledge of the '996 Patent because Finjan's United States Patent No. 6,092,194, which shares the same inventor as the '996 Patent, was cited in Symantec's U.S. Patent Nos: 7,975,303; 7,895,654; 7,861,304; 7,739,278; 7,546,638; 7,509,680; 6,785,818; 7,293,290; 7,367,056; 7,469,419; 7,337,471; 7,373,667; 7,565,686; 7,260,847; 7,203,959; 7,130,981; 7,249,187; 7,246,227; 7,483,993; 7,484,094; and 7,818,807.

55.     Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Symantec Endpoint Protection Manager, including Symantec Endpoint Protection, and to encourage potential customers, users and developers to use Symantec Endpoint Protection Manager in the manner described by Finjan and thereby practice the methods taught in the '996 Patent.

## COUNT III
### (Direct Infringement of the '289 Patent pursuant to 35 U.S.C. § 271(a))

56.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.:_____

57.     Defendant has infringed and continues to infringe one or more claims of the '289 Patent in violation of 35 U.S.C. § 271(a).

58.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

59.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

60.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Disarm, which embody the patented invention of the '289 Patent.

61.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

62.     Defendant's infringement of the '289 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

63.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '289 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

## COUNT IV
### (Indirect Infringement of the '289 Patent pursuant to 35 U.S.C. § 271(b))

64.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

65.     Defendant has induced and continues to induce infringement of at least claims 1-9, 19-21, 25-28, and 35-39 of the '289 Patent under 35 U.S.C. § 271(b).

66.     In addition to directly infringing the '289 Patent, Defendant indirectly infringes the '289 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the steps of the method claims of the '289 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '289 Patent.

67.     Defendant knowingly and actively aided and abetted the direct infringement of the '289 Patent by instructing and encouraging its customers, users and developers to use Disarm.  Such instructions and encouragement include but are not limited to, advising third parties to use Disarm in an infringing manner, providing a mechanism through which third parties may infringe the '289 Patent, specifically through the use of Disarm, advertising and promoting the use of Disarm in an infringing manner, and distributing guidelines and instructions to third parties on how to use Disarm in an infringing manner.

68.     Symantec regularly updates and maintains the Technical Support & Symantec Connect webpages to provide demonstration, instructions, and technical assistance to users to help them use the Disarm, including:

- Providing a Disarm whitepaper, detailing the functionalities of Disarm. *See* http://www.symantec.com/business/support/index?page=content&id=TECH211412, a true and correct copy of which is attached hereto as Exhibit 18;

15

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

- Giving instructions on the interactions of Disarm and other Symantec features, which includes functionalities which Disarm can be used for. *See* http://www.symantec.com/business/support/index?page=content&id=HOWTO93093, a true and correct copy of which is attached hereto as Exhibit 19;

- Informing users about the dangers of zero-day exploits which Disarm protects against. *See* http://www.symantec.com/connect/blogs/disarm-advanced-persistent-threats-symantec-messaging-gateway, a true and correct copy of which is attached hereto as Exhibit 20;

- Providing Disarm as a solution to customer problems. *See* http://www.symantec.com/connect/forums/any-solution-mitigate-recent-microsoft-word-vulnerability-microsoft-security-advisory-2953095, a true and correct copy of which is attached hereto as Exhibit 21.

69. Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings. *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 11.

70. Symantec provides and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings. *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 12.

71. Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products. *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 13; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 14.

72. Symantec maintains and promotes the Symantec Partner Program to encourage and expand use of Disarm by offering up-to-date training and certification enabled by a full curriculum of courses in order to increase skills and competency with reselling the Symantec products. *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.:_____

state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached hereto as Exhibit 15.

73.     Symantec maintains and promotes the Symantec University for Partners which offers training, credentials and certification programs for the Symantec products. *See* http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached hereto as Exhibit 16.

74.     Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products. *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 17.

75.     Defendant has had knowledge of the '289 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '289 Patent.

76.     On information and belief, Defendant had knowledge of the '289 Patent because the '289 Patent was cited as a reference in the Defendant's United States Patent Application No. 2004/0158729.  On information and belief, Defendant had knowledge of the '289 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.

77.     Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Disarm, including Messaging Gateway, Message Gateway for Service Providers, Message Gateway Small Business Edition, and to encourage potential customers,

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.:_____

users and developers to use Disarm in the manner described by Finjan and thereby practice the methods taught in the '289 Patent.

## COUNT V
### (Direct Infringement of the '299 Patent pursuant to 35 U.S.C. § 271(a))

78.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

79.     Defendant has infringed and continues to infringe one or more claims of the '299 Patent in violation of 35 U.S.C. § 271(a).

80.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

81.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

82.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Norton Safe Web, which embodies the patented invention of the '299 Patent.

83.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

84.     Defendant's infringement of the '299 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

85.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '299 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI
### (Indirect Infringement of the '299 Patent pursuant to 35 U.S.C. § 271(b))

86.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

87.    Defendant has induced and continues to induce infringement of at least claims 1-12 and 21 of the '299 Patent under 35 U.S.C. § 271(b).

88.    In addition to directly infringing the '299 Patent, Defendant indirectly infringes the '299 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the steps of the method claims of the '299 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '299 Patent.

89.    Defendant knowingly and actively aided and abetted the direct infringement of the '299 Patent by instructing and encouraging its customers, users and developers to use Norton Safe Web.  Such instructions and encouragement include but are not limited to, advising third parties to use Norton Safe Web in an infringing manner, providing a mechanism through which third parties may infringe the '299 Patent, specifically through the use of Norton Safe Web, advertising and promoting the use of Norton Safe Web in an infringing manner, and distributing guidelines and instructions to third parties on how to use Norton Safe Web in an infringing manner.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

90.     Symantec regularly updates and maintains the Norton Safe Web site to provide

demonstration, instructions, and technical assistance to users to help them use Norton Safe Web,

including:

- Providing an overview of Norton Safe Web and promoting its use.  *See*
  https://safeweb.norton.com/about, a true and correct copy of which is attached hereto as Exhibit
  22;

- Maintaining and promoting a Community Buzz area for Norton Safe Web in order to promote
  the use and spread the network effects of users.  *See* https://safeweb.norton.com/buzz, a true
  and correct copy of which is attached hereto as Exhibit 23;

- Providing users with information on the types of threats which Norton Safe Web can provide
  reports on.  *See* https://safeweb.norton.com/safety, a true and correct copy of which is attached
  hereto as Exhibit 24;

- Publishing, maintaining, and promoting the use of Community Forums in order to assist in the
  use of Norton Safe Web.  *See*
  http://community.norton.com/t5/forums/searchpage/tab/message?filter=labels&q=safe+web, a
  true and correct copy of which is attached hereto as Exhibit 25.

- Proving a tutorial on how to use Norton Safe Web.  *See*
  http://us.norton.com/products/toolbar/tutorials/tutorials.jsp?pvid=n360v3, a true and correct
  copy of which is attached hereto as Exhibit 7.

91.     Symantec provides articles, videos and downloads which cover in depth aspects of

operating Symantec's offerings.  *See* http://www.symantec.com/business/support/index?page=home,

a true and correct copy of which is attached hereto as Exhibit 11.

92.     Symantec provides and maintains an FTP site with Symantec's quick start guides,

administration guides, user guides, and operating instructions which cover in depth aspects of

operating Symantec's offerings.  *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and

correct copy of which is attached hereto as Exhibit 12.

93.     Symantec maintains and updates a streaming video channel called Symantec TV and a

YouTube channel where training and informational videos are posted in order to promote the use of

Symantec products.  *See* http://www.symantec.com/tv/, a true and correct copy of which is attached

COMPLAINT FOR PATENT INFRINGEMENT          CASE NO.:_____

hereto as Exhibit 13; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 14.

94.     Symantec maintains and promotes the Symantec Partner Program to encourage and expand use of Norton Safe Web by offering up-to-date training and certification enabled by a full curriculum of courses in order to increase skills and competency with reselling the Symantec products.  *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached hereto as Exhibit 15.

95.     Symantec maintains and promotes the Symantec University for Partners which offers training, credentials and certification programs for the Symantec products.  *See* http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached hereto as Exhibit 16.

96.     Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products.  *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 17.

97.     Defendant has had knowledge of the '299 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '299 Patent.

98.     On information and belief, Defendant had knowledge of the '299 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.

21

99.     Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Norton Safe Web, including Norton Anti-Virus, Norton Internet Security, Norton 360 and Safe-Web Lite, and to encourage potential customers, users and developers to use Norton Safe Web in the manner described by Finjan and thereby practice the methods taught in the '299 Patent.

## COUNT VII
### (Direct Infringement of the '182 Patent pursuant to 35 U.S.C. § 271(a))

100.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

101.     Defendant has infringed and continues to infringe one or more claims of the '182 Patent in violation of 35 U.S.C. § 271(a).

102.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

103.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

104.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Norton Safe Web, which embody the patented invention of the '182 Patent.

105.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

106.     Defendant's infringement of the '182 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

107.    Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '182 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII
### (Indirect Infringement of the '182 Patent pursuant to 35 U.S.C. § 271(c))

108.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

109.    Defendant has contributorily infringed and continues to contributorily infringe at least claims 1-21 of the '182 Patent under 35 U.S.C. § 271(c).

110.    In addition to directly infringing the '182 Patent, Defendant indirectly infringes the '182 Patent pursuant to 35 U.S.C. § 271(c) by selling Norton Safe Web, a material component of a patented machine or apparatus for use in practicing the claims of the '182 Patent by its customers, users and developers, and especially adapted for use in an infringement of the '182 Patent. Norton Safe Web is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendant has had knowledge of the '182 Patent at least as of the time it learned of this action for infringement and/or was willfully blind to the fact that it contributed to the direct infringement of one or more claims of the '182 Patent by others, either literally or under the doctrine of equivalents, including customers, users and developers.  On information and belief, Defendant had knowledge of

23

the '182 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.

## COUNT IX
### (Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))

111.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

112.    Defendant has infringed and continues to infringe one or more claims of the '154 Patent in violation of 35 U.S.C. § 271(a).

113.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

114.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

115.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to SONAR with Insight, which embody the patented invention of the '154 Patent.

116.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

117.    Defendant's infringement of the '154 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

118.    Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.     An entry of judgment holding that Defendant has infringed and is infringing the '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, and the '154 Patent; that Defendant has induced and is inducing infringement of the '996 Patent, the '289 Patent, and the '299 Patent; and that Defendant contributorily infringed and continues to contributorily infringe the '182 Patent;

B.     A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from directly or indirectly infringing the '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, and the '154 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.     An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, and the '154 Patent, said damages to be no less than a reasonable royalty;

D.     A determination that Defendant's infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis;

E.     A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.:_____

F.      An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, and the '154 Patent; and

G.      Such further and other relief as the Court may deem proper and just.

Respectfully submitted,

Dated:  June 30, 2014                          By:  */s/ Paul J. Andre*
                                                     Paul J. Andre
                                                     Lisa Kobialka
                                                     James Hannah
                                                     KRAMER LEVIN NAFTALIS
                                                     & FRANKEL LLP
                                                     990 Marsh Road
                                                     Menlo Park, CA 94025
                                                     Telephone: (650) 752-1700
                                                     Facsimile: (650) 752-1800
                                                     pandre@kramerlevin.com
                                                     lkobialka@kramerlevin.com
                                                     jhannah@kramerlevin.com

                                                     *Attorneys for Plaintiff*
                                                     FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.:_____

## DEMAND FOR JURY TRIAL

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  June 30, 2014

By:  */s/ Paul J. Andre*
Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

1

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.:_____