PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYMANTEC CORP., a Delaware Corporation,<br><br>Defendant. | Case No.: 3:14-cv-02998-RS<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this First Amended Complaint for Patent Infringement and Jury Demand against Defendant Symantec Corporation. ("Defendant" or "Symantec") and alleges as follows:

## THE PARTIES

1.      Finjan is a Delaware corporation, with its principal place of business at 333 Middlefield Road, Suite 110, Menlo Park, CA 94025.  Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.      Symantec is a Delaware corporation with its corporate headquarters at 350 Ellis Street, Mountain View, California 94043.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District.  Currently, Symantec is availing itself of the jurisdiction of Northern California in the *Symantec v. RPost Holdings, Inc. et. al*, 3:14-cv-00238, case.  In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

FIRST AMENDED COMPLAINT                                    CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

**FINJAN'S INNOVATIONS**

6.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

7.      Finjan built and sold software, including APIs, and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues.

8.      Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

9.      On November 28, 2000, U.S. Patent No. 6,154,844 ("the '844 Patent"), entitled SYSTEM AND METHOD FOR ATTACHING A DOWNLOADABLE SECURITY PROFILE TO A DOWNLOADABLE, was issued to Shlomo Touboul and Nachshon Gal.  A true and correct copy of the '844 Patent is attached hereto as Exhibit 1 and is incorporated by reference herein.

10.     All rights, title, and interest in the '844 Patent have been assigned to Finjan, who is the sole owner of the '844 Patent.  Finjan has been the sole owner of the '844 Patent since its issuance.

11.     The '844 Patent is generally directed towards computer networks, and more particularly, provides a system that protects devices connected to the Internet from undesirable operations from web-based content.  One of the ways this is accomplished is by linking a security profile to such web-based content to facilitate the protection of computers and networks from malicious web-based content.

12.     On November 3, 2009, U.S. Patent No. 7,613,926 ("the '926 Patent"), entitled METHOD AND SYSTEM FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE DOWNLOADABLES, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '926 Patent is attached hereto as Exhibit 2 and is incorporated by reference herein.

13.     All rights, title, and interest in the '926 Patent have been assigned to Finjan, which is the sole owner of the '926 Patent.  Finjan has been the sole owner of the '926 Patent since its issuance.

14.     The '926 Patent generally covers a method and system for protecting a computer and a network from hostile downloadables.  The claims generally cover performing hashing on a downloadable in order to generate a downloadable ID, retrieving security profile data, and transmitting an appended downloadable.

FIRST AMENDED COMPLAINT                                CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

15.     On July 13, 2010, U.S. Patent No. 7,756,996 ("the '996 Patent"), entitled EMBEDDING MANAGEMENT DATA WITHIN HTTP MESSAGES, was issued to Shlomo Touboul.  A true and correct copy of the '996 Patent is attached hereto as Exhibit 3 and is incorporated by reference herein.

16.     All rights, title, and interest in the '996 Patent have been assigned to Finjan, who is the sole owner of the '996 Patent.  Finjan has been the sole owner of the '996 Patent since its issuance.

17.     The '996 Patent generally covers a system and method for embedding messages within HTTP streams.  The claims generally cover inserting non-HTTP management data from a management server, which is intended for at least one client computer, and sending that non-HTTP management data embedded within an HTTP message through a gateway (or proxy) computer to at least one client computer.

18.     On July 13, 2010, U.S. Patent No. 7,757,289 ("the '289 Patent"), entitled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '289 Patent is attached hereto as Exhibit 4 and is incorporated by reference herein.

19.     All rights, title, and interest in the '289 Patent have been assigned to Finjan, who is the sole owner of the '289 Patent.  Finjan has been the sole owner of the '289 Patent since its issuance.

20.     The '289 Patent generally covers a system and method for inspecting dynamically generated executable code.  The claims generally cover receiving content with an original call function and replacing the original call function with a substitute call function, and then determining whether it is safe to invoke the original call function.

FIRST AMENDED COMPLAINT                                    CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

21.     On April 19, 2011, U.S. Patent No. 7,930,299 ("the '299 Patent"), entitled SYSTEM AND METHOD FOR APPENDING SECURITY INFORMATION TO SEARCH ENGINE RESULTS, was issued to Yuval Ben-Itzhak and Limor Elbaz.  A true and correct copy of the '299 Patent is attached hereto as Exhibit 5 and is incorporated by reference herein.

22.     All rights, title, and interest in the '299 Patent have been assigned to Finjan, who is the sole owner of the '299 Patent.  Finjan has been the sole owner of the '299 Patent since its issuance.

23.     The '299 Patent generally covers a system and method for appending security information to search engine results.  The claims generally cover a search request generating results for which a content scanner assesses potential security risks, resulting in a combined security and results summary.

24.     On September 6, 2011, U.S. Patent No. 8,015,182 ("the '182 Patent"), entitled SYSTEM AND METHOD FOR APPENDING SECURITY INFORMATION TO SEARCH ENGINE RESULTS, was issued to Yuval Ben-Itzhak and Limor Elbaz.  A true and correct copy of the '182 Patent is attached hereto as Exhibit 6 and is incorporated by reference herein.

25.     All rights, title, and interest in the '182 Patent have been assigned to Finjan, who is the sole owner of the '182 Patent.  Finjan has been the sole owner of the '182 Patent since its issuance.

26.     The '182 Patent generally covers a system for appending security information to search engine results.  The claims generally require a search engine for locating web content, a client computer for issuing a search request, and a content security scanner to assess potential security risks.

27.     On March 20, 2012, U.S. Patent No. 8,141,154 ("the '154 Patent"), entitled SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was

FIRST AMENDED COMPLAINT                                          CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '154 Patent is attached hereto as Exhibit 7 and is incorporated by reference herein.

28.     All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent.  Finjan has been the sole owner of the '154 Patent since its issuance.

29.     The '154 Patent is generally directed towards a gateway computer for protecting a client computer from dynamically generated malicious content.  One way this is accomplished is to use a content processor to process a first function and invoke a second function if a security computer indicates that it is safe to invoke the second function.

30.     On March 18, 2014, U.S. Patent No. 8,677,494 ("the '494 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '494 Patent is attached hereto as Exhibit 8 and is incorporated by reference herein.

31.     All rights, title, and interest in the '494 Patent have been assigned to Finjan, who is the sole owner of the '494 Patent.  Finjan has been the sole owner of the '494 Patent since its issuance.

32.     The '494 Patent is generally directed towards a method and system for deriving security profiles and storing the security profiles.  The claims generally cover deriving a security profile for a downloadable, which includes a list of suspicious computer operations, and storing the security profile in a database.

6

**Symantec**

33.     Symantec makes, uses, sells, offers for sale, and/or imports into the United States and this District products and services that utilize SONAR with Insight, Disarm, Norton Safe Web, Norton Safe Search, Symantec Protection Engine, Next Generation anti-malware engine, Managed Security Services, and Symantec Endpoint Protection Manager, including without limitation on Symantec Endpoint Protection, Symantec Endpoint Protection Small Business Edition, Network Access Control, Norton Internet Security, Norton Anti-Virus, Norton 360, Safe-Web Lite, Managed Security Services-Advance Threat Protection, Advanced Threat Protection Solution, Symantec Protection Engine for Cloud Services, Symantec Protection Engine for Network Attached Storage, Symantec Mail Security for Domino, Symantec Mail Security for Microsoft Exchange, Symantec Scan Engine for Windows, Web Security.cloud, Messaging Gateway, Messaging Gateway for Service Providers, Messaging Gateway Small Business Edition, Email Security.cloud, AntiVirus/Filtering for Domino, AntiVirus for Linux, Mail Security for SMTP, Scan Engine for Linux/Solaris, AntiVirus for Caching/Messaging/NAS for Linux/Solaris, Protection Engine for Linux/Solaris, AntiVirus for Caching/Messaging/NAS for Windows, Web Gateway and Norton Security.

34.     Symantec operates roughly in three segments, which are:  User Productivity & Protection, Information Security, and Information Management.  Symantec's User Productivity & Protection segment sells products that are under the "Norton" brand name and are directed towards individuals and home businesses.  Symantec's User Productivity & Protection segment also sells under the Symantec brand name, which is directed mainly toward enterprise and small/medium business customers.  Symantec's Information Security segment sells products that provide SSL certificates, mail and web security, data center security, data loss prevention and information security

FIRST AMENDED COMPLAINT                                          CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

services offerings.  Symantec's Information Management segment focuses on backup, recovery and electronic discovery.

### **Advanced Threat Protection Solution**

35.     Symantec Advanced Threat Protection Solution provides Symantec customers with critical detection and response capabilities across the endpoint, email and gateway.  Advanced Threat Protection Solution uses two Symantec technologies, Dynamic Malware Analysis Service, a cloud-based sandbox environment where behavioral analysis of active content can be used for threat identification, and Synapse, which enables communication between the endpoint, email and gateway. *See* http://www.symantec.com/about/news/release/article.jsp?prid=20140505_01, a true and correct copy of which is attached hereto as Exhibit 9.  Below is a description of Symantec Advanced Threat Protection:



*See* http://www.symantec.com/connect/events/getting-beyond-standalone-antivirus-advanced-threat-protection, a true and correct copy of which is attached hereto as Exhibit 10.

8

**Managed Security Services - Advanced Threat Protection**

36.     Symantec's Managed Security Services – Advanced Threat Protection integrates the customer's different information sources (such as the endpoint, Symantec's own malware analysis in the cloud, and firewall appliance) and correlates security information making it available to the customer.  Some of the information that Managed Security Services makes available to the customer is malware details including the event name, event type, correlated events, detection type, hash values, behavior information (such as files, registry keys and services created, modified, and/or deleted) and Symantec Global File Reputation.  Below is a depiction from Symantec's website of Symantec's Managed Security Services – Advanced Threat Protection:





9



*See* http://www.symantec.com/content/en/us/enterprise/fact_sheets/b-overview-solution-mss-advanced-threat-protection-21332713.pdf, a true and correct copy of which is attached hereto as Exhibit 11; *see also* http://www.symantec.com/managed-security-services, a true and correct copy of which is attached hereto as Exhibit 12.

### Web Gateway

37.     Symantec Web Gateway protects organizations against multiple types of malware using either a virtual appliance or physical hardware.  Symantec Web Gateway now integrates with Symantec Insight in versions 5.0 and later, which uses proactive technology to detect threats as they are created.  Below is a description from Symantec's website of Symantec Web Gateway:

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

**Key features and benefits**

**Protection**

- Backed by the Symantec Global Intelligence Network with real time updates to bolster protection.
- Integrates Symantec's award-winning AntiVirus engine.
- Powered by Insight and providing proactive protection against new, targeted, or mutating threats:
  - Detects threats as they are created.
  - Uses context to reduce false positives and cut management overhead.
  - Powered by the collective wisdom of over 210 million systems.
  - Infected client detection allows for easy identification of infected users and enables remediation.
  - Botnet identification and remediation capabilities helps ensure users aren't unknowingly or knowingly sending sensitive data out of the organization.
  - Multiple layers of malware protection.

*See* http://www.symantec.com/content/en/us/enterprise/fact_sheets/b-symantec-web-gateway-52-DS-21197723.en-us.pdf, a true and correct copy of which is attached hereto as Exhibit 13; *see also* http://www.symantec.com/web-gateway., a true and correct copy of which is attached hereto as Exhibit 14.

## Symantec Protection Engine

38.     Symantec gateway products include the Symantec Protection Engine which is enabled by the next generation malware detection engine to detect unknown, recent, and new threat through dynamic categorization and advanced heuristics.  Symantec Protection Engine can be found in all enterprise gateway products.

Symantec Protection Engine, formerly marketed as Symantec Scan Engine, is a carrier-class content-scanning engine. The scan engine features all of the key content-scanning technologies that are available in the complete line of Symantec enterprise security products. The scan engine provides content-scanning capabilities to any application on an IP network, regardless of platform. Any application can pass files to the scan engine for scanning. The scan engine accepts scan requests from the client applications that use the following protocols:

Show all

*See* http://www.symantec.com/business/support/index?page=content&id=TECH83878, a true and correct copy of which is attached hereto as Exhibit 15.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

**New Features**

- Symantec Insight™ reputation protection technology.

- The next generation malware detection engine enables Protection Engine to detect unknown, recent, and new threats through dynamic categorization and advanced heuristics.

- Provides flexible and powerful control over files that cannot be accurately scanned, including encrypted files or malformed containers.

- Integration with Microsoft Active Directory® for authentication with Protection Engine console.

*See* http://www.symantec.com/protection-engine-for-cloud-services, a true and correct copy of which is attached hereto as Exhibit 16.

**Insight with SONAR**

39.     Symantec Insight, also known as Cloud Scan, uses reputation technology to track many files from numerous systems to identify new threats as they are created.  Insight analyzes the source of files, the age of files, and other security metrics such as how the file may be associated with malware and changing encryption and mutating code.  Symantec products leverage Insight to make decisions about files and applications.  Malware, Virus and Spyware Protection includes a feature called Download Insight, which relies on the Insight information to make decisions about files.  Download Insight is an Auto-Protect feature which examines files that users try to download through Web browsers, text messaging clients and other portals.

40.     Symantec Online Network for Advanced Response (SONAR) 4.0 and later proactively detects new threats based on their behaviors.  SONAR examines programs as they run, potentially injecting code into applications.  SONAR leverages Insight in order to address Advanced Persistent Threats, which operate through drive-by downloads and malware:  Below is a description from a fact sheet available on Symantec's website of Symantec Insight and SONAR:

FIRST AMENDED COMPLAINT                                    CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10



*See* http://www.symantec.com/connect/sites/default/files/Insight_and_SONAR_factsheet_US.pdf, a

true and correct copy of which is attached hereto as Exhibit 17.

### Norton Safe Web / Safe Search

41.     Norton Safe Web checks whether a website is malicious before one visits the website

and rates it.  In order to rate websites, Norton Safe Web performs analysis using signature-based file

scanning, intrusion detection engines, behavioral detection and install/uninstall analysis to identify

security risks such as phishing sites, malicious downloads, browser exploits and links to unsafe

external sites.  Norton's Safe Web will annotate search results from Google, Yahoo and Bing.

Norton's Safe Web product also has an element called Safe Search that is in the Norton Tool Bar.

Safe Search uses the ask.com search engine to deliver search results in a custom search environment

created by Norton while also appending the search results as is done with Safe Web.  Over 40 million

computer desktops use Norton Safe Web.  Below is a depiction from Symantec's Norton website of

Norton Safe Web:

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT                                CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT



*See* http://us.norton.com/products/toolbar/tutorials/tutorials.jsp?pvid=n360v3, a true and correct copy of which is attached hereto as Exhibit 18.

**Disarm**

42.      Disarm is a Symantec Messaging Gateway technology that locates and removes potentially malicious content from email attachments.  Disarm scans both inbound and outbound messages for Microsoft Office and Adobe PDF attachments that may contain malicious content.  Malicious content includes macros, scripts, Flash content, and other exploitable content.  Disarm will deconstruct the attachment, remove any potentially malicious content and reconstruct the documents.  Disarm is implemented as an extension of Symantec's Messaging Gateway's day-zero detection feature.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

**Symantec Endpoint Protection Manager**

43.     Symantec Endpoint Protection Manger communicates with endpoint clients in order to establish and enforce security policies, manage the deployment and configuration of antivirus protection, manage the updating and reporting of antivirus, and manage the endpoint intrusion prevention and firewall protection.

**Norton Security**

44.     Norton Security utilizes Symantec's Insight with SONAR and a next generation anti-malware engine to provide reputational and behavioral based protection.  Norton Security uses Norton's cloud to provide instant protection from new and emerging threats to customer's computers.

New enhancements and features for PC | New enhancements and features for Mac

Built on a legacy of world-class security products, including Norton Antivirus, Norton Internet Security and Norton 360,  our new offering, Norton Security, includes an array of 'defense-in-depth' technologies that have protected our customers for years. These include Network-based defense technologies such as our Firewall and Intrusion Protection System (IPS), File-based defense technologies (traditional core anti-virus capabilities), Reputation-based defense technologies (Insight) and Behavioral-based technologies (SONAR).

Many of these protection technologies have been enhanced and or completely rebuilt from the ground up.  The many improvements you get to try out the beta version include:

**New look and feel**

The most obvious change is the new look and feel of the user interface. Delivering a clean and modern look, the Windows software sets the tone for our latest security offering across multiple operating systems.

**Next Generation anti-malware engine**

A new real-time malware detection engine fundamentally changes the way traditional file-based antivirus protection is delivered to our customers: Key features of this new engine include:

All of Symantec's intelligence – over 4.3 trillion relationships – now powers all of Norton's real-time protection. Every time you touch a file, Norton evaluates it against thousands of criteria to determine if it is an attack.

By relying on Norton's cloud, the on-disk definitions are now 80% smaller. It's our quickest and lightest Norton yet.

Real-time definition updates of propagating malware. Historically as new viruses are discovered, new antivirus definitions have to be pushed out to customer machines. This process can take anywhere from a few minutes to several hours With this new engine, information about new threats is made instantly available via Norton's cloud infrastructure. This greatly improves the speed at which users are of protection against new emerging threats.

*See* http://us.norton.com/ns-beta, a true and correct copy of which is attached hereto as Exhibit 19.

FIRST AMENDED COMPLAINT                          CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

## SYMANTEC'S INFRINGEMENT OF FINJAN'S PATENTS

45.     Defendant has been and is now infringing, literally or under the doctrine of equivalents, the '844 Patent, the '926 Patent, the '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, the '154 Patent, and the '494 Patent, (collectively "the Patents-In-Suit") in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed systems and methods that utilize SONAR with Insight, Disarm, Norton Safe Web, Norton Safe Search, Symantec Protection Engine, Next Generation anti-malware engine, Managed Security Services, and Symantec Endpoint Protection Manager, including without limitation on  Symantec Endpoint Protection, Symantec Endpoint Protection Small Business Edition, Network Access Control, Norton Internet Security, Norton Anti-Virus, Norton 360, Safe-Web Lite, Managed Security Services-Advance Threat Protection, Advanced Threat Protection Solution, Symantec Protection Engine for Cloud Services, Symantec Protection Engine for Network Attached Storage, Symantec Mail Security for Domino, Symantec Mail Security for Microsoft Exchange, Symantec Scan Engine for Windows, Web Security.cloud, Messaging Gateway, Messaging Gateway for Service Providers, Messaging Gateway Small Business Edition, Email Security.cloud, AntiVirus/Filtering for Domino, AntiVirus for Linux, Mail Security for SMTP, Scan Engine for Linux/Solaris, AntiVirus for Caching/Messaging/NAS for Linux/Solaris, Protection Engine for Linux/Solaris, AntiVirus for Caching/Messaging/NAS for Windows, Web Gateway and Norton Security.

46.     In addition to directly infringing the Patents-In-Suit pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, Defendant indirectly infringes '844 Patent, the '926 Patent, the '996 Patent, the '289 Patent, the '299 Patent, and the '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its customers, users and

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

developers, to perform the steps of the method claims of these patents, either literally or under the doctrine of equivalents.

47.     In addition to directly infringing the '182 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, Defendant indirectly infringes the '182 Patent pursuant to 35 U.S.C. § 271(c) by selling a material component of a patented machine or apparatus for use in practicing the claims of the '182 Patent, either literally or under the doctrine of equivalents, by its customers, users and developers, and especially adapted for use in an infringement of the '182 Patent.

## COUNT I
### (Direct Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(a))

48.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

49.     Defendant has infringed and continues to infringe one or more claims of the '844 Patent in violation of 35 U.S.C. § 271(a).

50.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

51.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

52.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to the Next Generation anti-malware engine in Norton's Cloud, which embodies the patented invention of the '844 Patent.

53.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

54.     Defendant's infringement of the '844 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

55.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '844 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

<u>COUNT II</u>
**(Indirect Infringement of the '844 Patent pursuant to 35 U.S.C. § 271(b))**

56.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

57.     Defendant has induced and continues to induce infringement of at least claims 1, 3-8, 11, 14 and 23-27 of the '844 Patent under 35 U.S.C. § 271(b).

58.     In addition to directly infringing the '844 Patent, Defendant indirectly infringes the '844 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the method claims of the '844 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '844 Patent.

59.     Defendant knowingly and actively aided and abetted the direct infringement of the '844 Patent by instructing and encouraging its customers, users and developers to use Next

18

Generation anti-malware engine in Norton's Cloud.  Such instructions and encouragement include but are not limited to, advising third parties to use Next Generation anti-malware engine in Norton's Cloud in an infringing manner, providing a mechanism through which third parties may infringe the '844 Patent, specifically through the use Next Generation anti-malware engine in Norton's Cloud, advertising and promoting the use of Next Generation anti-malware engine in Norton's Cloud in an infringing manner and distributing guidelines and instructions to third parties on how to use Next Generation anti-malware engine in Norton's Cloud in an infringing manner.

60.     Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings.  *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 20.

61.     Symantec updates and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings.  *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 21.

62.     Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products.  *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 22; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 23.

63.     Symantec hosts training sessions, webcasts and meetings with customers on the https://symantecmeetingcenter.webex.com/ website where Symantec describes how to use Symantec products and promotes the use of Symantec Products.  *See*

FIRST AMENDED COMPLAINT                           CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

https://symantecmeetingcenter.webex.com/, a true and correct copy of which is attached hereto as Exhibit 24.

64.     Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products. *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 25.

65.     Defendant has had knowledge of the '844 Patent at least as of the time it learned of this First Amended Complaint for infringement and by continuing the actions described above has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '844 Patent.

66.     On information and belief, Defendant had knowledge of the '844 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.  On information and belief, Defendant had knowledge of the '844 Patent at least as of the time it learned of this action for infringement, in which Defendant has been accused of infringing other patents also owned by Finjan.  On information and belief, Defendant had knowledge of the '844 Patent because Finjan's United States Patent No. 6,092,194, which shares the same inventor as the '844 Patent, was cited in Symantec's U.S. Patent Nos: 7,975,303; 7,895,654; 7,861,304; 7,739,278; 7,546,638; 7,509,680; 6,785,818; 7,293,290; 7,367,056; 7,469,419; 7,337,471; 7,373,667; 7,565,686; 7,260,847; 7,203,959; 7,130,981; 7,249,187; 7,246,227; 7,483,993; 7,484,094; and 7,818,807.

67.     Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Next Generation anti-malware engine in Norton's Cloud and to encourage potential customers, users and developers to use Next Generation anti-malware engine

FIRST AMENDED COMPLAINT                                    CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

in Norton's Cloud in the manner described by Finjan and thereby practice the methods taught in the '844 Patent.

## COUNT III
### (Direct Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(a))

68.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69.     Defendant has infringed and continues to infringe one or more claims of the '926 Patent in violation of 35 U.S.C. § 271(a).

70.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

71.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

72.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including, but not limited to, the Managed Security Services – Advanced Threat Protection, which embody the patented invention of the '926 Patent.

73.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

74.     Defendant's infringement of the '926 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

75.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art

21

1    before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits

2    involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and

3    deliberately engage in acts of infringement of the '926 Patent, justifying an award to Finjan of

4    increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. §

5    285.

6                                          **COUNT IV**

7              **(Indirect Infringement of the '926 Patent pursuant to 35 U.S.C. § 271(b))**

8         76.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the

9    allegations of the preceding paragraphs, as set forth above.

10        77.     Defendant has induced and continues to induce infringement of at least claims 1-7 and

11   15-21,  of the '926 Patent under 35 U.S.C. § 271(b).

12        78.     In addition to directly infringing the '926 Patent, Defendant indirectly infringes the

13   '926 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including

14   but not limited to its customers, users and developers, to perform the method claims of the '926

15   Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to

16   the fact that it was inducing others, including customers, users and developers, to infringe by

17   practicing one or more method claims of the '926 Patent.

18        79.     Defendant knowingly and actively aided and abetted the direct infringement of the

19   '926 Patent by instructing and encouraging its customers, users and developers to use Managed

20   Security Services – Advanced Threat Protection.  Such instructions and encouragement include but

21   are not limited to, advising third parties to use Managed Security Services – Advanced Threat

22   Protection in an infringing manner, providing a mechanism through which third parties may infringe

23   the '926 Patent, specifically through the use of Managed Security Services – Advanced Threat

24   Protection, advertising and promoting the use Managed Security Services – Advanced Threat

**FIRST AMENDED COMPLAINT**                          CASE NO.: 3:14-cv-02998-RS
**FOR PATENT INFRINGEMENT**

Protection in an infringing manner, and distributing guidelines and instructions to third parties on how to use Managed Security Services – Advanced Threat Protection in an infringing manner.

80.     Symantec promotes the use of Managed Security Services – Advanced Threat Protection on its website, which includes instructional videos and press releases on Managed Security Services – Advanced Threat Protection.  *See* http://www.symantec.com/managed-security-services, a true and correct copy of which is attached hereto as Exhibit 12.

81.     Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings.  *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 20.

82.     Symantec updates and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings.  *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 21.

83.     Symantec hosts training sessions, webcasts and meetings with customers on the https://symantecmeetingcenter.webex.com/ website where Symantec describes how to use Symantec products and promotes the use of Symantec Products.  *See* https://symantecmeetingcenter.webex.com/, a true and correct copy of which is attached hereto as Exhibit 24.

84.     Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products.  *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 22; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 23.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

85.     Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products.  *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 25.

86.     Defendant has had knowledge of the '926 Patent at least as of the time it learned of this First Amended Complaint for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '926 Patent.

87.     On information and belief, Defendant had knowledge of the '926 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.  On information and belief, Defendant had knowledge of the '926 Patent at least as of the time it learned of this action for infringement, in which Defendant has been accused of infringing other patents also owned by Finjan.  On information and belief, Defendant had knowledge of the '926 Patent because Finjan's United States Patent No. 6,092,194, which shares the same inventor as the '926Patent, was cited in Symantec's U.S. Patent Nos: 7,975,303; 7,895,654; 7,861,304; 7,739,278; 7,546,638; 7,509,680; 6,785,818; 7,293,290; 7,367,056; 7,469,419; 7,337,471; 7,373,667; 7,565,686; 7,260,847; 7,203,959; 7,130,981; 7,249,187; 7,246,227; 7,483,993; 7,484,094; and 7,818,807.

88.     Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Managed Security Services – Advanced Threat Protection and to encourage potential customers, users and developers to use Managed Security Services – Advanced Threat Protection in the manner described by Finjan and thereby practice the methods taught in the '926 Patent.

FIRST AMENDED COMPLAINT                                    CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

## COUNT V
### (Direct Infringement of the '996 Patent pursuant to 35 U.S.C. § 271(a))

89.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

90.     Defendant has infringed and continues to infringe one or more claims of the '996 Patent in violation of 35 U.S.C. § 271(a).

91.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

92.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

93.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Symantec Endpoint Protection Manager, which embodies the patented invention of the '996 Patent.

94.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

95.     Defendant's infringement of the '996 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

96.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '996 Patent, justifying an award to Finjan of

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT VI**
**(Indirect Infringement of the '996 Patent pursuant to 35 U.S.C. § 271(b))**

97.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

98.     Defendant has induced and continues to induce infringement of at least claims 4-6 of the '996 Patent under 35 U.S.C. § 271(b).

99.     In addition to directly infringing the '996 Patent, Defendant indirectly infringes the '996 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the method claims of the '996 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '996 Patent.

100.     Defendant knowingly and actively aided and abetted the direct infringement of the '996 Patent by instructing and encouraging its customers, users and developers to use Symantec Endpoint Protection Manager.  Such instructions and encouragement include but are not limited to, advising third parties to use the Symantec Endpoint Protection Manager in an infringing manner, providing a mechanism through which third parties may infringe the '996 Patent, specifically through the use of the Symantec Endpoint Protection Manager, advertising and promoting the use of the Symantec Endpoint Protection Manager in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Symantec Endpoint Protection Manager in an infringing manner.

FIRST AMENDED COMPLAINT                                          CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

101.     Symantec regularly updates and maintains the Technical Support & Symantec Connect webpages to provide demonstration, instructions, and technical assistance to users to help them use the Symantec Endpoint Protection Manager, including:

- Providing troubleshooting for issues involving Symantec Endpoint Protection Manager.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH160964, a true and correct copy of which is attached hereto as Exhibit 26;

- Providing instruction on using and updating Symantec Endpoint Protection Manager.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH214866, a true and correct copy of which is attached hereto as Exhibit 27;

- Informing users on the best practices to apply and learn about Symantec Endpoint Protection Manager.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH134367&actp=search&viewlocale=en_US&searchid=1400713321997, a true and correct copy of which is attached hereto as Exhibit 28.

102.     Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings.  *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 20.

103.     Symantec updates and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings.  *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 21.

104.     Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products.  *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 22; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 23.

105.     Symantec hosts training sessions, webcasts and meetings with customers on the https://symantecmeetingcenter.webex.com/ website where Symantec describes how to use Symantec

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

products and promotes the use of Symantec Products. *See*
https://symantecmeetingcenter.webex.com/, a true and correct copy of which is attached hereto as
Exhibit 24.

106.   Symantec maintains and promotes the Symantec Partner Program to encourage and
expand use of the Symantec Endpoint Protection Manager by offering up-to-date training and
certification enabled by a full curriculum of courses in order to increase skills and competency with
reselling the Symantec products. *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-
state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached
hereto as Exhibit 29.

107.   Symantec maintains and promotes the Symantec University for Partners which offers
training, credentials and certification programs for the Symantec products. *See*
http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-
state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached
hereto as Exhibit 30.

108.   Symantec provides a database of supported products which provides documentation,
release notes and technical solutions to Symantec products. *See*
http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allpr
oducts, a true and correct copy of which is attached hereto as Exhibit 25.

109.   Defendant has had knowledge of the '996 Patent at least as of the time it learned of
this action for infringement and by continuing the actions described above, has had the specific intent
to or was willfully blind to the fact that its actions would induce infringement of the '996 Patent.

110.   On information and belief, Defendant had knowledge of the '996 Patent because
Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

6,480,962, also owned by Finjan.  On information and belief, Defendant had knowledge of the '996 Patent because Finjan's United States Patent No. 6,092,194, which shares the same inventor as the '996 Patent, was cited in Symantec's U.S. Patent Nos: 7,975,303; 7,895,654; 7,861,304; 7,739,278; 7,546,638; 7,509,680; 6,785,818; 7,293,290; 7,367,056; 7,469,419; 7,337,471; 7,373,667; 7,565,686; 7,260,847; 7,203,959; 7,130,981; 7,249,187; 7,246,227; 7,483,993; 7,484,094; and 7,818,807.

111.    Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Symantec Endpoint Protection Manager, including Symantec Endpoint Protection, and to encourage potential customers, users and developers to use Symantec Endpoint Protection Manager in the manner described by Finjan and thereby practice the methods taught in the '996 Patent.

## COUNT VII
### (Direct Infringement of the '289 Patent pursuant to 35 U.S.C. § 271(a))

112.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

113.    Defendant has infringed and continues to infringe one or more claims of the '289 Patent in violation of 35 U.S.C. § 271(a).

114.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

115.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

116.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Disarm, which embody the patented invention of the '289 Patent.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

117.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

118.     Defendant's infringement of the '289 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

119.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '289 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT VIII
### (Indirect Infringement of the '289 Patent pursuant to 35 U.S.C. § 271(b))

120.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

121.     Defendant has induced and continues to induce infringement of at least claims 1-9, 19-21, 25-28, and 35-39 of the '289 Patent under 35 U.S.C. § 271(b).

122.     In addition to directly infringing the '289 Patent, Defendant indirectly infringes the '289 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the steps of the method claims of the '289 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully

FIRST AMENDED COMPLAINT                                          CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

1    blind to the fact that it was inducing others, including customers, users and developers, to infringe by

2    practicing one or more method claims of the '289 Patent.

3          123.   Defendant knowingly and actively aided and abetted the direct infringement of the

4    '289 Patent by instructing and encouraging its customers, users and developers to use Disarm.  Such

5    instructions and encouragement include but are not limited to, advising third parties to use Disarm in

6    an infringing manner, providing a mechanism through which third parties may infringe the '289

7    Patent, specifically through the use of Disarm, advertising and promoting the use of Disarm in an

8    infringing manner, and distributing guidelines and instructions to third parties on how to use Disarm

9    in an infringing manner.

10

11         124.   Symantec regularly updates and maintains the Technical Support & Symantec Connect

12   webpages to provide demonstration, instructions, and technical assistance to users to help them use

13   the Disarm, including:

14

15   • Providing a Disarm whitepaper, detailing the functionalities of Disarm.  *See*
      http://www.symantec.com/business/support/index?page=content&id=TECH211412, a true and
16     correct copy of which is attached hereto as Exhibit 31;

17   • Giving instructions on the interactions of Disarm and other Symantec features, which includes
      functionalities which Disarm can be used for.  *See*
18     http://www.symantec.com/business/support/index?page=content&id=HOWTO93093, a true
      and correct copy of which is attached hereto as Exhibit 32;

19

20   • Informing users about the dangers of zero-day exploits which Disarm protects against.  *See*
      http://www.symantec.com/connect/blogs/disarm-advanced-persistent-threats-symantec-
21     messaging-gateway, a true and correct copy of which is attached hereto as Exhibit 33;

22   • Providing Disarm as a solution to customer problems.  *See*
      http://www.symantec.com/connect/forums/any-solution-mitigate-recent-microsoft-word-
23     vulnerability-microsoft-security-advisory-2953095, a true and correct copy of which is attached
      hereto as Exhibit 34.
24

25         125.   Symantec provides articles, videos and downloads which cover in depth aspects of

26   operating Symantec's offerings.  *See* http://www.symantec.com/business/support/index?page=home,

27   a true and correct copy of which is attached hereto as Exhibit 20.

28
                                                    31

126.     Symantec updates and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings.  *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 21.

127.     Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products.  *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 22; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 23.

128.     Symantec hosts training sessions, webcasts and meetings with customers on the https://symantecmeetingcenter.webex.com/ website where Symantec describes how to use Symantec products and promotes the use of Symantec Products.  *See* https://symantecmeetingcenter.webex.com/, a true and correct copy of which is attached hereto as Exhibit 24.

129.     Symantec maintains and promotes the Symantec Partner Program to encourage and expand use of Disarm by offering up-to-date training and certification enabled by a full curriculum of courses in order to increase skills and competency with reselling the Symantec products.  *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached hereto as Exhibit 29.

130.     Symantec maintains and promotes the Symantec University for Partners which offers training, credentials and certification programs for the Symantec products.  *See* http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

1   state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached

2   hereto as Exhibit 30.

3       131.    Symantec provides a database of supported products which provides documentation,

4   release notes and technical solutions to Symantec products. *See*

5   http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allpr

6   oducts, a true and correct copy of which is attached hereto as Exhibit 25.

7       132.    Defendant has had knowledge of the '289 Patent at least as of the time it learned of

8   this action for infringement and by continuing the actions described above, has had the specific intent

9
10   to or was willfully blind to the fact that its actions would induce infringement of the '289 Patent.

11      133.    On information and belief, Defendant had knowledge of the '289 Patent because the

12   '289 Patent was cited as a reference in the Defendant's United States Patent Application No.

13   2004/0158729.  On information and belief, Defendant had knowledge of the '289 Patent because

14   Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No.

15
16   6,480,962, also owned by Finjan.

17      134.    Symantec actively and intentionally maintains and updates websites, including

18   Symantec's support pages, to promote Disarm, including Messaging Gateway, Message Gateway for

19   Service Providers, Message Gateway Small Business Edition, and to encourage potential customers,

20   users and developers to use Disarm in the manner described by Finjan and thereby practice the

21   methods taught in the '289 Patent.
22
23                          **COUNT IX**
                **(Direct Infringement of the '299 Patent pursuant to 35 U.S.C. § 271(a))**

24      135.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the

25   allegations of the preceding paragraphs, as set forth above.

26
27
28                                  33

136.     Defendant has infringed and continues to infringe one or more claims of the '299 Patent in violation of 35 U.S.C. § 271(a).

137.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

138.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

139.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Norton Safe Web, which embodies the patented invention of the '299 Patent.

140.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

141.     Defendant's infringement of the '299 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

142.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '299 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

FIRST AMENDED COMPLAINT                                    CASE NO.: 3:14-cv-02998-RS
FOR PATENT INFRINGEMENT

## COUNT X
### (Indirect Infringement of the '299 Patent pursuant to 35 U.S.C. § 271(b))

143.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

144.    Defendant has induced and continues to induce infringement of at least claims 1-12 and 21 of the '299 Patent under 35 U.S.C. § 271(b).

145.    In addition to directly infringing the '299 Patent, Defendant indirectly infringes the '299 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the steps of the method claims of the '299 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '299 Patent.

146.    Defendant knowingly and actively aided and abetted the direct infringement of the '299 Patent by instructing and encouraging its customers, users and developers to use Norton Safe Web.  Such instructions and encouragement include but are not limited to, advising third parties to use Norton Safe Web in an infringing manner, providing a mechanism through which third parties may infringe the '299 Patent, specifically through the use of Norton Safe Web, advertising and promoting the use of Norton Safe Web in an infringing manner, and distributing guidelines and instructions to third parties on how to use Norton Safe Web in an infringing manner.

147.    Symantec regularly updates and maintains the Norton Safe Web site to provide demonstration, instructions, and technical assistance to users to help them use Norton Safe Web, including:

- Providing an overview of Norton Safe Web and promoting its use.  *See* https://safeweb.norton.com/about, a true and correct copy of which is attached hereto as Exhibit 35;

35

- Maintaining and promoting a Community Buzz area for Norton Safe Web in order to promote the use and spread the network effects of users. *See* https://safeweb.norton.com/buzz, a true and correct copy of which is attached hereto as Exhibit 36;

- Providing users with information on the types of threats which Norton Safe Web can provide reports on. *See* https://safeweb.norton.com/safety, a true and correct copy of which is attached hereto as Exhibit 37;

- Publishing, maintaining, and promoting the use of Community Forums in order to assist in the use of Norton Safe Web. *See* http://community.norton.com/t5/forums/searchpage/tab/message?filter=labels&q=safe+web, a true and correct copy of which is attached hereto as Exhibit 38.

- Proving a tutorial on how to use Norton Safe Web. *See* http://us.norton.com/products/toolbar/tutorials/tutorials.jsp?pvid=n360v3, a true and correct copy of which is attached hereto as Exhibit 18.

148.     Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings. *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 20.

149.     Symantec updates and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings. *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 21.

150.     Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products. *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 22; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 23.

151.     Symantec maintains and promotes the Symantec Partner Program to encourage and expand use of Norton Safe Web by offering up-to-date training and certification enabled by a full curriculum of courses in order to increase skills and competency with reselling the Symantec

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

products.  *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached hereto as Exhibit 29.

152.   Symantec hosts training sessions, webcasts and meetings with customers on the https://symantecmeetingcenter.webex.com/ website where Symantec describes how to use Symantec products and promotes the use of Symantec Products.  *See* https://symantecmeetingcenter.webex.com/, a true and correct copy of which is attached hereto as Exhibit 24.

153.   Symantec maintains and promotes the Symantec University for Partners which offers training, credentials and certification programs for the Symantec products.  *See* http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached hereto as Exhibit 30.

154.   Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products.  *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 25.

155.   Defendant has had knowledge of the '299 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '299 Patent.

156.   On information and belief, Defendant had knowledge of the '299 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

157.    Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Norton Safe Web, including Norton Anti-Virus, Norton Internet Security, Norton 360, Norton Security and Safe-Web Lite, and to encourage potential customers, users and developers to use Norton Safe Web in the manner described by Finjan and thereby practice the methods taught in the '299 Patent.

## COUNT XI
### (Direct Infringement of the '182 Patent pursuant to 35 U.S.C. § 271(a))

158.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

159.    Defendant has infringed and continues to infringe one or more claims of the '182 Patent in violation of 35 U.S.C. § 271(a).

160.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

161.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

162.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Norton Safe Web, which embody the patented invention of the '182 Patent.

163.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

164.    Defendant's infringement of the '182 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

165.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '182 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII
### (Indirect Infringement of the '182 Patent pursuant to 35 U.S.C. § 271(c))

166.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

167.     Defendant has contributorily infringed and continues to contributorily infringe at least claims 1-21 of the '182 Patent under 35 U.S.C. § 271(c).

168.     In addition to directly infringing the '182 Patent, Defendant indirectly infringes the '182 Patent pursuant to 35 U.S.C. § 271(c) by selling Norton Safe Web, a material component of a patented machine or apparatus for use in practicing the claims of the '182 Patent by its customers, users and developers, and especially adapted for use in an infringement of the '182 Patent. Norton Safe Web is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Defendant has had knowledge of the '182 Patent at least as of the time it learned of this action for infringement and/or was willfully blind to the fact that it contributed to the direct infringement of one or more claims of the '182 Patent by others, either literally or under the doctrine of equivalents, including customers, users and developers.  On information and belief, Defendant had knowledge of

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

the '182 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.

## COUNT XIII
### (Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))

169.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

170.    Defendant has infringed and continues to infringe one or more claims of the '154 Patent in violation of 35 U.S.C. § 271(a).

171.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

172.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

173.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to SONAR with Insight and Norton Security, which embody the patented invention of the '154 Patent.

174.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

175.    Defendant's infringement of the '154 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

176.    Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIV
### (Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))

177.    Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

178.    Defendant has infringed and continues to infringe one or more claims of the '494 Patent in violation of 35 U.S.C. § 271(a).

179.    Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

180.    Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

181.    Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's gateway products and services, including but not limited to Symantec Protection Engine, which embodies the patented invention of the '494 Patent.

182.    As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

183.    Defendant's infringement of the '494 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

184.     Defendant is well aware of Finjan's patents and has continued its infringing activity despite this knowledge.  On at least two separate occasions, Finjan has met with Defendant regarding Finjan's patent portfolio.  Additionally, Defendant's patents cite various Finjan patents as prior art before the United States Patent and Trademark Office.  Further, Defendant is aware of two lawsuits involving Finjan's patent portfolio.  As such, Defendant has continued to willfully, wantonly, and deliberately engage in acts of infringement of the '494 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

**COUNT XV**
**(Indirect Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(b))**

185.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

186.     Defendant has induced and continues to induce infringement of at least claims 1-9 of the '494 Patent under 35 U.S.C. § 271(b).

187.     In addition to directly infringing the '494 Patent, Defendant indirectly infringes the '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform the steps of the method claims of the '494 Patent, either literally or under the doctrine of equivalents.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing one or more method claims of the '494 Patent.

188.     Defendant knowingly and actively aided and abetted the direct infringement of the '494 Patent by instructing and encouraging its customers, users and developers to use Symantec Protection Engine.  Such instructions and encouragement include but are not limited to, advising third parties to use Symantec Protection Engine in an infringing manner, providing a mechanism through

which third parties may infringe the '494 Patent, specifically through the use of Symantec Protection Engine, advertising and promoting the use of Symantec Protection Engine in an infringing manner, and distributing guidelines and instructions to third parties on how to use Symantec Protection Engine in an infringing manner.

189.    Symantec provides an explanation of the function, role, and capabilities of the Symantec Protection Engine on its website.  *See* http://www.symantec.com/business/support/index?page=content&id=TECH83878, a true and correct copy of which is attached hereto as Exhibit 15.

190.    Symantec provides articles, videos and downloads which cover in depth aspects of operating Symantec's offerings.  *See* http://www.symantec.com/business/support/index?page=home, a true and correct copy of which is attached hereto as Exhibit 20.

191.    Symantec updates and maintains an FTP site with Symantec's quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Symantec's offerings.  *See* ftp://ftp.symantec.com/public/english_us_canada/, a true and correct copy of which is attached hereto as Exhibit 21.

192.    Symantec maintains and updates a streaming video channel called Symantec TV and a YouTube channel where training and informational videos are posted in order to promote the use of Symantec products.  *See* http://www.symantec.com/tv/, a true and correct copy of which is attached hereto as Exhibit 22; *see also* https://www.youtube.com/user/symantec, a true and correct copy of which is attached hereto as Exhibit 23.

193.    Symantec maintains and promotes the Symantec Partner Program to encourage and expand use of Symantec Protection Engine by offering up-to-date training and certification enabled by a full curriculum of courses in order to increase skills and competency with reselling the Symantec

products. *See* http://partnernet.symantec.com/portal/faces/programs?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322002563102000, a true and correct copy of which is attached hereto as Exhibit 29.

194.    Symantec maintains and promotes the Symantec University for Partners which offers training, credentials and certification programs for the Symantec products. *See* http://partnernet.symantec.com/portal/faces/training?_adf.ctrl-state=1a6rp36yws_4&_afrLoop=1322106092053000, a true and correct copy of which is attached hereto as Exhibit 30.

195.    Symantec hosts training sessions, webcasts and meetings with customers on the https://symantecmeetingcenter.webex.com/ website where Symantec describes how to use Symantec products and promotes the use of Symantec Products. *See* https://symantecmeetingcenter.webex.com/, a true and correct copy of which is attached hereto as Exhibit 24.

196.    Symantec provides a database of supported products which provides documentation, release notes and technical solutions to Symantec products. *See* http://www.symantec.com/business/support/index?page=products&inid=us_ghp_cont2_support_allproducts, a true and correct copy of which is attached hereto as Exhibit 25.

197.    Defendant has had knowledge of the '494 Patent at least as of the time it learned of this action for infringement and by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '494 Patent.

198.    On information and belief, Defendant had knowledge of the '494 Patent because Defendant is involved in a lawsuit involving United States Patent No. 6,092,194 and Patent No. 6,480,962, also owned by Finjan.

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

199.     Symantec actively and intentionally maintains and updates websites, including Symantec's support pages, to promote Symantec Protection Engine, including Symantec Protection Engine for Cloud Services, Symantec Protection Engine for Network Attached Storage, Symantec Mail Security for Domino, Symantec Mail Security for Microsoft Exchange, Symantec Scan Engine for Windows, Web Security.cloud, Messaging Gateway, Messaging Gateway for Service Providers, Messaging Gateway Small Business Edition, Email Security.cloud, AntiVirus/Filtering for Domino, AntiVirus for Linux, Mail Security for SMTP, Scan Engine for Linux/Solaris, AntiVirus for Caching/Messaging/NAS for Linux/Solaris, Protection Engine for Linux/Solaris, AntiVirus for Caching/Messaging/NAS for Windows and Web Gateway, and to encourage potential customers, users and developers to use Symantec Protection Engine in the manner described by Finjan and thereby practice the methods taught in the '494 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.     An entry of judgment holding that Defendant has infringed and is infringing the '844 Patent, the '926 Patent, '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, the '154 Patent, and the '494 Patent; that Defendant has induced and is inducing infringement of the '844 Patent, the '926 Patent, '996 Patent, the '289 Patent, the '299 Patent, and the '494 Patent; and that Defendant contributorily infringed and continues to contributorily infringe the '182 Patent;

B.     A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from directly or indirectly infringing the '844 Patent, the '926 Patent, '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, the '154 Patent, and the '494 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS

C.      An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the '844 Patent, the '926 Patent, '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, and the '154 Patent, said damages to be no less than a reasonable royalty;

D.      A determination that Defendant's infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis;

E.      A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

F.      An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '844 Patent, the '926 Patent, '996 Patent, the '289 Patent, the '299 Patent, the '182 Patent, the '154 Patent, and the '494; and

G.      Such further and other relief as the Court may deem proper and just.

Respectfully submitted,

Dated:  September 11, 2014                    By:  */s/ Paul J. Andre*
                                                    Paul J. Andre
                                                    Lisa Kobialka
                                                    James Hannah
                                                    KRAMER LEVIN NAFTALIS
                                                    & FRANKEL LLP
                                                    990 Marsh Road
                                                    Menlo Park, CA 94025
                                                    Telephone: (650) 752-1700
                                                    Facsimile: (650) 752-1800
                                                    pandre@kramerlevin.com
                                                    lkobialka@kramerlevin.com
                                                    jhannah@kramerlevin.com

                                                    *Attorneys for Plaintiff*
                                                    FINJAN, INC.

46

## **DEMAND FOR JURY TRIAL**

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  September 11, 2014

By:  */s/ Paul J. Andre*
Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

1

FIRST AMENDED COMPLAINT
FOR PATENT INFRINGEMENT

CASE NO.: 3:14-cv-02998-RS