PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

Attorneys for Plaintiff
FINJAN, INC.

SEAN PAK (Bar No. 219032)
seanpak@quinnemanuel.com
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:   (415) 875 6600
Facsimile:    (415) 875 6700

Attorneys for Defendant
SYMANTEC CORP.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FINJAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> SYMANTEC CORP., <br><br> Defendant. | Case No.: 3:14-CV-02998 RS <br><br> **STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

**Purpose**

1. This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. The parties' agreement to the terms of this Order should not be deemed an acknowledgement that any information hereby excluded from discovery would or would not be discoverable in the absence of this Order. Nothing in this Order shall waive in whole or in part any objection raised by a party in its written responses to specific discovery requests served in this action.

2. Nothing in this Order shall relieve the parties of any obligations they may have to produce responsive ESI of which they are aware, but that may not fall within the parties' agreed-upon search parameters.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

**Cooperation**

4. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI. The parties agree to meet and confer about ESI as needed to help to resolve disputes without court intervention.

**Modifications**

5. This Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**Liaison**

6. If a dispute arises that involves the technical aspects of ESI, each party shall designate an ESI liaison who is and will be knowledgeable about and responsible for discussing their respective ESI. Each ESI liaison will be, or have access to those who are, knowledgeable about the technical aspects of ESI, including the location, nature, accessibility, format, collection, search methodologies,

1

and production of ESI in this matter.  The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**Preservation**

7. The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.  To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Each party will preserve all ESI that is relevant to the claims and defenses in this litigation that was created or received on or after June 30, 2008;

b) Each party will preserve, regardless of date, all ESI concerning the Patents-in-Suit, any products or services related to the conception or reduction to practice of or covered by the Patents-in-Suit, any products or services accused of infringement in this action and any information specifically regarding the other party;

c) For the purposes of this litigation, the parties agree that ESI from the following data sources will be considered not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and the parties agree they need not preserve the following:  (i) recorded voice messages; (ii) instant messaging communications that are not ordinarily printed or maintained in a server dedicated to instant messaging; (iii) temporary data stored in a computer's random access memory (RAM), or other ephemeral data that are difficult to preserve without disabling the operating system; (iv) on-line access data such as temporary Internet files, history, cache, cookies, and the like; (v) device-to-device (pin-to-pin) messages sent to or from mobile devices (e.g., Android, iPhone, and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere; (vi) other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere; (vii) logs of calls made from mobile devices; (viii) server, system or network logs; (ix) electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

d) For the purposes of this litigation, the parties agree that ESI from the following data sources could contain relevant information and should be preserved, but under the proportionality factors need not be searched, reviewed or produced absent good cause shown by the requesting party: (i) backup tapes intended for disaster-recovery purposes that are not indexed, organized, or susceptible to electronic searching and that are substantially duplicative of data more accessible elsewhere, and (ii) deleted data remaining in fragmented form only accessible by forensics. If a producing party contends that responsive ESI from any sources other than (i)-(ii) above (and other than sources that need not be preserved per paragraph 6(c) above) need not be searched, reviewed or produced, that party shall timely identify such ESI with reasonably particularity and shall provide the receiving party with the basis for declining to produce such ESI. The parties shall negotiate in good faith regarding the production of any such ESI.

**Production Format**

8. Documents will be produced in single-page TIFF format with full-text extraction and Concordance load files. If there is no extractable text, the producing party shall perform Optical Character Recognition ("OCR") on the document and provide the associated text file. All text files should be produced as document level text files with a path to the text file included in the Concordance load file; extracted text/OCR should not be embedded in the load file itself. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format to the extent reasonably accessible. Additionally, in the event that production of a document in TIFF image file format would be impracticable, the producing party shall have the option of producing such document in native format.

9. If not produced in native form initially, the following documents shall be produced in native form upon a reasonable request and to the extent reasonably accessible: standalone database files such as Microsoft Excel or Access files; project management files such as Microsoft Project files; CAD files; and executable software. The parties shall not unreasonably refuse a request for the production of other documents in native form.

10. Extracts from non-standalone databases, e.g., financial databases, shall be produced in a uniform standard form, e.g., as a text delimited file, or where possible as an MS Excel or MS Access file.

11. Where documents produced natively are displaced from the production TIFF images of the documents with which they are kept in the ordinary course of business, the parties shall produce a Bates-numbered TIFF placeholder image, and associate the displaced native documents with that Bates number.

**Metadata**

12. The following metadata shall be provided within the Concordance delimited file described above for each document to the extent reasonably accessible: Extracted text, Custodian.

13. Additionally, for emails, the following additional metadata shall be provided to the extent it exists and is reasonably accessible: To, From, CC, BCC, Date Sent, Time Sent, Subject, Parent-child relationships.

14. Should additional metadata exist that if provided would significantly aid a receiving party in understanding or using the documents, if requested, the producing party shall not unreasonably withhold such metadata if such metadata is reasonably accessible.

**Email**

15. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

16. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

17. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.  While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

4

[~~PROPOSED~~] ORDER REGARDING DISCOVERY           Case No.: 3:14-CV-02998 RS
OF ELECTRONICALLY STORED INFORMATION

18. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth herein and in the Guidelines.

19. Each requesting party shall limit its email production requests to a total of ten custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost shifting may be considered as part of any such request. The parties shall meet and confer as soon as possible to identify the custodians who are most likely to have responsive or relevant emails.

20. By no later than February 13, 2015, Symantec Corp. ("Symantec") will produce a list of internal or code terms for its products and services that are accused of infringement in this action to the extent such internal or code terms exist, and Finjan, Inc. ("Finjan") will produce a list of internal or code terms for its products and services that allegedly practice the asserted patents to the extent such internal or code terms exist.

21. Each requesting party shall limit its email production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. A disjunctive string of patent numbers that are asserted in this litigation only counts as 1 term. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate

discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery. If the producing party is aware that the requesting party's search parameters would fail to locate a substantial amount of responsive emails, the producing party shall promptly notify the requesting party of such fact and the parties shall meet and confer to identify appropriate search parameters.

22. No later than fourteen days after receiving a list of search terms for a custodian, the producing party shall provide a hit count identifying the number of documents each search term identified during the search. The requesting party may then provide a modified list of search terms (but may not change the identified custodian unless the hit count produces an unreasonably low number of results), and the other party shall provide a hit count identifying the number of documents each modified search term identified during the search within four business days after receiving the modified list of search terms. The producing party shall produce the identified emails in a reasonably diligent manner.

23. If a party determines that additional custodians or search terms are required and the parties are unable to reach agreement regarding the request following good faith meet and confer efforts, the party requesting additional custodians and/or search terms may seek relief from the Court based on a showing of distinct need as described above.

24. Nothing in this Order or the parties' agreement to limit email using the foregoing search parameters shall relieve the parties of any obligations they may have to produce specific items of responsive ESI that they know about but which do not fall within the parties' agreed-upon search parameters. To the extent a party is aware or made aware of a substantial amount of responsive ESI that has not fallen within the parties' agreed-upon search parameters, it agrees to promptly notify the requesting party and to meet and confer with the requesting party to modify the parties' agreed-upon search parameters in order to encompass such ESI.

25. While the parties have agreed to the use of search terms for locating responsive emails under this Order as set forth above, nothing in this Order prevents the parties from later agreeing to use

[~~PROPOSED~~] ORDER REGARDING DISCOVERY   Case No.: 3:14-CV-02998 RS
OF ELECTRONICALLY STORED INFORMATION

technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

**Other ESI**

26. For all other ESI that must be preserved and searched, reviewed and produced, and which does not qualify as email ESI as set forth above, a producing party shall be subject to its general obligation to conduct a reasonable search to locate and produce any responsive information (subject to its objections) pursuant to Federal Rule of Civil Procedure 34.  Such search may include using the search terms identified above to search ESI on central databases, servers, or individual hard drives, or producing all ESI from particular electronic folders or files likely to contain responsive information, and/or any other appropriate method to capture the responsive information.  Should the producing party contend that the burden of retrieving ESI from a particular ESI source outweighs potential benefit or relevance, the producing party shall identify this issue to the requesting party, and the parties shall thereafter meet and confer in good faith to attempt to resolve the issue.

**Privilege and Lack of Waiver**

27. The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected except to challenge the privilege or protection.

28. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

29. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

30. Neither party will produce nor list on any privilege log any item protected by any privilege, immunity, or protection that occurred or was/is created on or after the filing date of this litigation except as required by Patent L.R. 3-7.

31. Communications involving trial counsel that post-date the filing of the complaint in *Finjan, Inc. v. McAfee, Inc., et al.*, Case No. 10-cv-593-GMS (D. Del.) but that pre-date the filing of the instant complaint also need not be placed on a privilege log; provided, however, that the parties

7

agree to log any such communications to the extent that such communications pertain to the patents-in-suit in the instant action.

32. No later than sixty (60) calendar days before the close of fact discovery, the parties will provide privilege logs for protected materials redacted or withheld for attorney client privilege or pursuant to the work product doctrine (or other privileges or doctrines).  For any such material redacted or withheld from documents produced by a party after this date (i.e., after sixty (60) calendar days before the close of fact discovery), the parties shall provide a privilege log within 14 days of the production or by the close of fact discovery, whichever is earlier.

33. The parties further agree that all privilege logs will include at least the following information:

(1) the identity of any attorneys who appear on the document;

(2) the identity of all persons who sent or received the document or communication;

(3) if known, the date the document was prepared or generated, and for correspondence or communications, the date the document was sent and received;

(4) the general subject matter addressed in the document or communication;

(5) the specific privilege or reason it is being redacted or withheld.

In addition, for any attorney identified for (1) above, the privilege log shall identify the firm, company or other group with which that attorney was affiliated at the time of the date of the document identified for (3) above.

The Producing Party may log all protected content in e-mail chains and strings by logging the topmost e-mail of the email chain or string, as well as sufficient information regarding any redacted or withheld material below the topmost email to allow the Receiving Party and the Court to make a cogent evaluation of the appropriateness of the assertion of a privilege or other protection.  Sufficient information in the foregoing sentence includes an identification of the author, recipient(s), date, privilege asserted and general subject matter of the redacted or withheld material below the topmost email, to the extent this information differs from such information provided for the topmost email.  A Producing Party's logging of the topmost e-mail shall be deemed to assert protection for all of the

protected material in an e-mail string or chain, including multiple redactions or multiple segments. Nothing herein shall prevent the Receiving Party from challenging the propriety of the designation of attorney-client privilege, work product or other designation of protection.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: February 3, 2015          By: /s/ James Hannah
                                     Paul Andre (State Bar. No. 196585)
                                     Lisa Kobialka (State Bar No. 191404)
                                     James Hannah (State Bar No. 237978)
                                     KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                     990 Marsh Road
                                     Menlo Park, CA  94025
                                     Telephone: (650) 752-1700
                                     Facsimile: (650) 752-1800
                                     pandre@kramerlevin.com
                                     lkobialka@kramerlevin.com
                                     jhannah@kramerlevin.com

                                     *Attorneys for Plaintiff*
                                     FINJAN, INC.

DATED: February 3, 2015          By: /s/ Sean Pak
                                     Sean Pak (State Bar No. 219032)
                                     seanpak@quinnemanuel.com
                                     QUINN EMANUEL URQUHART
                                       & SULLIVAN, LLP
                                     50 California Street, 22nd Floor
                                     San Francisco, California  94111-4788
                                     Telephone: (415) 875-6600
                                     Facsimile: (415) 875-6700

                                     David A. Nelson (*pro hac vice*)
                                     davenelson@quinnemanuel.com
                                     QUINN EMANUEL URQUHART
                                       & SULLIVAN, LLP
                                     500 West Madison Street, Suite 2450
                                     Chicago, IL 60661
                                     Telephone: (312) 705-7400
                                     Facsimile: (312) 705-7401

9

[PROPOSED] ORDER REGARDING DISCOVERY                    Case No.: 3:14-CV-02998 RS
OF ELECTRONICALLY STORED INFORMATION

Alexander Rudis (*pro hac vice*)
alexanderrudis@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Defendant*
SYMANTEC INC.

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

By: */s/ James Hannah*
      James Hannah

**IT IS ORDERED** that the forgoing agreement is approved.

Dated: 2/4/2015

UNITED STATES DISTRICT JUDGE
THE HONORABLE RICHARD D. SEEBORG

10

[~~PROPOSED~~] ORDER REGARDING DISCOVERY       Case No.: 3:14-CV-02998 RS
OF ELECTRONICALLY STORED INFORMATION