QUINN EMANUEL URQUHART & SULLIVAN, LLP
Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David A. Nelson (*pro hac vice*)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Alexander Rudis (*pro hac vice*)
alexanderrudis@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Symantec Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>SYMANTEC CORP.,<br><br>　　　　Defendant. | CASE NO. 3:14-cv-02998-HSG (JSC)<br><br>**DEFENDANT SYMANTEC CORPORATION'S REPLY IN SUPPORT OF MOTION TO STAY PENDING IPR PROCEEDINGS**<br><br>Date: October 1, 2015<br>Time: 2 p.m.<br>Courtroom F. 15th Floor<br>Honorable Haywood Gilliam |

A stay is warranted in this case because (1) substantial and expensive fact and expert discovery remain and no dates for summary judgment or trial have been set, (2) this case will be simplified whatever the outcome of the IPRs – either some (if not all) claims will be invalidated or Symantec's invalidity defenses at trial will be streamlined pursuant to the estoppel provisions of the Patent Act, and (3) Finjan will not be prejudiced by the stay, because it is not irreparably harmed by any Symantec activity. Finjan's licensing business will continue, and Finjan does not have any commercial embodiments that compete with any of Symantec's accused products and technologies.

None of the arguments in Finjan's Opposition tip the balance in favor of continuing this litigation at the same time that the PTAB considers the validity of Finjan's patents. First, Finjan's arguments about the state of discovery only highlights the amount of work left to do. Next, Finjan's claim that Symantec is guilty of gamesmanship, because it filed its IPRs a year after the case was filed, ignores that Symantec acted within the period specified by statute.

Finally, Finjan's assertion that it competes with Symantec is incorrect and unsupported. Finjan claims that it started offering a new "consulting service" – CybeRisk Security Solutions ("CSS") – to customers in June 2015. Opp'n at 10; Lee Decl. Ex. 7. That is not true. Finjan, Inc., the plaintiff in this case, is a patent-licensing entity, and does not provide any services. CSS is a different company and is not a service offered by Finjan. *Cf. id*. CSS is a wholly owned subsidiary of a third company, Finjan Holdings Inc. Cassidy Dec. Ex. 14. In addition, the product referenced in Finjan's Opposition – the "Mobile Secure Browser" – is a free product offered by Finjan Holdings, Inc. not Finjan, Inc. Opp'n at 10; Lee Dec. Ex. 6. Neither CSS nor Finjan Holdings, Inc. are a party in this litigation, and Finjan does not explain how the activities of those companies are relevant to Finjan's claim that it is harmed by Symantec's conduct.

Symantec therefore asks the Court to stay this case until the IPR petitions are resolved.

**A.      Extensive and Expensive Fact and Expert Discovery Lies Ahead.**

A stay is warranted when significant discovery remains. *LELO, Inc. v. Standard Innovation (US) Corp.,* No. 13-cv-01393-JD, 2014 WL 2879851, at *3 (N.D. Cal. Jun. 24, 2014). Several weeks ago, Finjan represented to Symantec that "fact discovery has just begun." Cassidy

1

Decl. Ex. 6. Indeed, Finjan made a similar representation to the Court just three months ago stating that "discovery is far from over." Finjan's Opp'n to Mot. to Strike at 1, 5, Dkt. 83. Now, with zero discovery-related activity having occurred in the interim, Finjan argues that "[s]ubstantial discovery has been taken in the case to date." Opp'n at 4.

In support of Finjan's change of heart that "substantial" discovery has been taken, it contends that the parties "have served hundreds of written discovery requests[.]" *Id.* at 4, 5. However, sending out discovery requests is the easy part—responding to them is what takes considerable time and expense. Indeed, even though the parties have produced thousands of documents and Symantec has made its source code available, Finjan concedes that it seeks much more information from Symantec. Opp'n at 5.

In its Opposition, Finjan attempts to distance itself from its previous belief that "fact discovery has just begun." Opp'n at 5. Finjan argues that this statement was limited to explaining why Finjan's infringement contentions did not cite key information about Symantec's products. *Id.* Symantec will not repeat the issues from its Motion to Strike Finjan's infringement contentions, but Finjan's argument demonstrates that Finjan demands more discovery from Symantec, and Symantec has asked the Court for help to limit the scope of Finjan's ballooning demands. By complaining that Symantec has been stonewalling discovery (even though untrue), Finjan highlights the number of disputes to resolve and the amount of work that remains to complete fact discovery. Opp'n at 5. And there is no current schedule to start expert discovery in place.

Finjan's arguments that the Court has already invested resources on claim construction and Symantec's Motion to Strike are not enough to deny Symantec's request for a stay. *See PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1025-26 (N.D. Cal. 2014); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-cv-01356, 2014 WL 116340, at *3-4 (N.D. Cal. Jan. 13, 2014). While the Court has held a Markman hearing, it has not yet issued a Claim Construction order. Furthermore, Finjan's argument that the Court has expended significant time on Symantec's Motion to Strike, because it involved "nearly 5000 pages of exhibits" (Opp'n at 5), ignores that Finjan conceded at the July 9, 2015 hearing that 95% of those exhibits are identical.

2
SYMANTEC'S REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:14-CV-02998-HSG

Cassidy Decl. Ex. 8 at 7:5-13.  In contrast, a stay would save the Court and the parties from additional expensive and time-consuming activities such as fact depositions, additional document production, expert discovery, summary judgment, pre-trial motions, and trial.  *PersonalWeb Techs.,* 69 F. Supp. 3d at 1026-27; *PersonalWeb Techs.,* 2014 WL 116340, at *3-4.

### B. Regardless of the Outcome of the IPRs, the PTAB's Decision Will Streamline this Case.

Symantec filed IPR petitions for the '844 patent, the '926 patent, and the '494 patent today.  Cassidy Dec. ¶ 3.  Now, as Symantec represented in its opening brief, all of Finjan's asserted claims in this case are the subject of an IPR petition.  Mot. at 6.

Finjan cites statistics from the USPTO in its Opposition to argue that "there is a [sic] little chance that all of the asserted claims will be subject to any IPR trials[.]"  Opp'n at 9.  Finjan's interpretation of these statistics as to whether ***all*** of the claims subject to Symantec's IPR petitions will be invalidated is not helpful to Court in deciding whether to stay this case.  "***The standard is simplification*** of the district court case, not complete elimination of it by the PTAB."  *LELO,* 2014 WL 2879851, at *3 (emphasis added).  "If this factor turned on [Finjan's] suggestion of an all-or-nothing requirement, the intent of the AIA to ***streamline*** patent disputes would be needlessly frustrated, and the ability of the district courts to efficiently manage their dockets would suffer."  *Id.* (emphasis added).

As Symantec explained in its opening brief, this case will be streamlined regardless of the outcome of the IPR petitions.  Mot. at 5-6.  If some of Finjan's asserted patent claims survive review, then this case would proceed and certain of Symantec's invalidity defenses would be limited by estoppel.  *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. C 13-4202 SI, 2014 WL 261837, at *2 (N.D. Cal. Jan. 23, 2014).  Alternatively, if the PTAB finds all asserted claims in this case invalid, then those decisions will resolve this entire case.

Moreover, the PTO's determination will be helpful to the parties in narrowing this case for trial.  The schedule requires Finjan to narrow the number of asserted claims and Symantec to narrow the number of asserted prior art references at two different stages as the case progresses.  *See* Second Jt. Case Mgmt. Statement and Proposed Order at Appendix A 2-3, Dkt. 63.  Waiting

3

for the PTO's determination before making these strategic decisions would benefit both sides. *PersonalWeb Techs.,* 69 F.Supp. 3d at 1027 ("[T]he landscape of the litigation could change dramatically in light of any PTAB ruling and the parties should have the benefit of that change before making strategic choices for trial.")

Because the IPR petitions will have a significant effect on this case, the Court and the parties would benefit from an immediate stay of this case until the PTAB decides whether to institute a review of Finjan's patents. *See DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG, 2015 WL 1967878, at *3-4 (N.D. Cal. May 1, 2015) (citing *PersonalWeb Techs.,* 2014 WL 116340, at *4) (finding that four-month delay before PTO's institution decision would issue was 'relatively short' and did not outweigh anticipated simplification of issues); *Delphix Corp. v. Actifio, Inc.,* No. 13-cv-04613, 2014 WL 6068407, at *2 (N.D. Cal. Nov. 13, 2014) ("At a minimum, instituting a brief, limited stay of approximately five months to see whether and how the PTAB will act on Defendant's IPR petitions will conserve judicial resources and avoid inconsistent results."); *Sec. People, Inc. v. Ojmar US, LLC*, No. 14-cv-04968-HSG, 2015 WL 3453780, at *4 (N.D. Cal. May 29, 2015) (finding that potential simplification of issues weighs in favor of stay prior to PTAB institution decision); *Pragmatus AV, LLC v. Faebook, Inc.*, No. 11-cv-02168-EJD, 2011 WL 4802958, at *3 (N.D. Cal. Oct. 11, 2011) (noting that "it is not uncommon for this court to grant stays pending reexamination prior to the PTO deciding to reexamine the patent"); *Ho Keung Tse v. Apple Inc.*, No. C 06–06573 SBA, 2007 WL 2904279, at *2 (N.D. Cal. Oct 4, 2007) (noting that "a court can grant a stay even if the Patent Office is still considering whether to grant a party's reexamination request").

### C. A Stay Will Not Prejudice Finjan.

Finjan's claims of harm are baseless. Finjan must provide evidence to demonstrate prejudice to defeat Symantec's Motion to Stay. Courts "in this district require 'evidence to substantiate an argument that direct competition will result in prejudice to the non-moving party.'" *Sec. People, Inc.*, 2015 WL 3453780, at *5. Because Finjan does not explain, much less show, how it will be harmed by Symantec's alleged infringement, the Court need not credit Finjan's arguments. *Id.*

4

Finjan asserts that it "currently offers customers a secure browser product … [and] a cybersecurity consulting service[.]" Opp'n at 10. But based on the exhibits attached to Finjan's Opposition and publicly available information, neither is true. The "Finjan Mobile Secure Browser" is a free product from Finjan Holdings, Inc. Lee Decl. Ex. 6. Finjan Holdings, Inc. is not a party in this case and Finjan does not explain how the activities of a different, albeit related, entity is relevant to any purported harm suffered by the plaintiff, Finjan, Inc., a non-practicing patent licensing entity. In addition, even if Finjan, Inc. was involved with the Finjan Mobile Secure Browser (which is unsubstantiated), it is not a commercial embodiment of any of the asserted patents in this case. *See* Cassidy Decl. Ex. 12 at 27; Ex. 13 at 13-14 (No. 14). Finjan also does not identify which Symantec product purportedly competes with the Finjan Mobile Secure Browser.

Finjan's claim that "Symantec's continued infringement causes significant harm to Finjan[]" that cannot be compensated by damages is baseless. *See* Opp'n at 1, 10-11. The lack of factual information in Finjan's argument, and Finjan's failure to show a connection between Finjan's patents and its alleged irreparable harm, dooms Finjan's claim that a stay would unduly prejudice Finjan. To show irreparable harm, Finjan must tie Symantec's purported infringement to the harm Finjan contends it suffered. *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) ("To show irreparable harm, it is necessary to show that the infringement caused harm in the first place."). *See Edwards Lifesciences AG v. CoreValve, Inc.,* 699 F.3d 1305, 1314-15 (Fed. Cir. 2012) (noting that "[a]bsent adverse equitable considerations, the winner of a judgment of validity and infringement may normally expect to regain the exclusivity that was lost with the infringement[,]" and that "'[c]ourts awarding permanent injunctions typically do so under circumstances where plaintiff practices its invention and is a direct market competitor'")

Nowhere in its Opposition does Finjan identify any of its patented functionality that is available in both an accused Symantec product and a Finjan product and, consequently, does not explain how Symantec competes with or harms Finjan. Moreover, even assuming Finjan does have commercial embodiments for its patents, given Finjan's business of licensing patents, Finjan will never have an exclusive position in the market with respect to its patented technology, which

5

further undermines Finjan's claim of irreparable harm.  *See Edwards Lifesciences*, 699 F.3d at 1315; *ActiveVideo Networks, Inc. v. Verizon Comm'ns, Inc.*, 694 F.3d 1312, 1337-1340 (Fed. Cir. 2012) (finding no irreparable harm to patentee given past licensing, and money damages would adequately compensate where there was "extensive licensing, licensing efforts . . . and no direct competition between [the parties]").

Without evidence that Finjan is being harmed by having to compete against its own patented technology in the market, Finjan cannot demonstrate harm sufficient to deny Symantec's Motion to Stay.  Finally, Finjan does not explain how it is being harmed by "competition" with Symantec, when Finjan Holdings, Inc. is giving its product away for free. Lee Decl. Ex. 6.

Finjan's claim of harm due to Symantec's alleged competition with a newly launched consulting service by CSS is similarly misleading.  CSS is a separate company wholly owned by Finjan Holdings, Inc.  Cassidy Decl. Ex. 14.  Finjan does not explain how the activities of a different company that is not a party in this litigation can cause harm to Finjan sufficient to deny Symantec's Motion to Stay.  In addition, the services provided by CSS do not embody any asserted patent claim and Finjan does not identify how Symantec competes with that service. Cassidy Decl. Ex. 12 at 27; Ex. 13 at 13-14 (No. 14).

Finjan also argues that a stay of this case would "unnecessarily and irrevocably hinder Finjan's patent licensing discussions with other third parties[.]"  Opp'n at 11.  Finjan does not offer any factual support for that argument.  Finjan makes money by licensing patents, therefore it can be compensated for the alleged infringement through monetary damages, which favors a stay. *DSS Tech. Mgmt., Inc.,* 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015); *Software Rights Archive, LLC v. Facebook, Inc.,* 2013 WL 5225522, *6 (N.D. Cal. Sep. 17, 2013).

### D.   Symantec's Motion is Not Gamesmanship

Finjan argues that "Symantec is abusing judicial resources and engaging in improper gamesmanship."  Opp'n at 7.  That contention is not true.  Finjan's three arguments made in support of that allegation are misguided.

***First,*** Finjan claims that Symantec unduly delayed filing its IPR petitions.  Opp'n at 1, 6-7. Symantec filed its petitions within the statutory timeframe.  35 U.S.C. § 315(b).  Symantec's

6
SYMANTEC'S REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:14-CV-02998-HSG

timely exercise of its statutory rights is not evidence of gamesmanship. *AT&T Intellectual Property I v. Tivo., Inc.*, 774 F. Supp. 2d 1049 (N.D. Cal. 2011) (stating that "parties having protection under the patent statutory framework may 'not complain of the rights afforded to others by that same statutory framework'"). This Court in another case declined "to read a 'dilatory motive' into Defendant's timely exercise of its statutory rights." *DSS Tech. Mgmt., Inc.,* 2015 WL 1967878, at *4 (N.D. Cal. May 1, 2015). The same result is appropriate here. *Delphix Corp. v. Actifio,* No. 13-cv-04613-BLF, 2014 WL 6068407, at *3 (N.D. Cal. Nov. 13, 2014); *Cypress Semiconductor Corp. v. LG Elecs., Inc.*, No: C 13-4034 SBA, 2014 WL 5477795, at *3 (N.D. Cal. Oct. 29, 2014); *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.,* No. C-13-4513-RMW, 2014 WL 819277, at *4 (N.D. Cal. Feb. 28, 2014); *Software Rights Archive, LLC v. Facebook, Inc.,* No. C-12-3970 RMW, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013).

***Second,*** Finjan claims that a stay would preclude Finjan from being able to efficiently and timely adjudicate its claims. Opp'n at 9. However, any stay pending completion of Symantec's IPR petitions would be shorter than the amount of time Finjan delayed in bringing these claims in the first place.

The '844 patent issued on November 28, 2000. Finjan's Am. Compl. at ¶9, Dkt. 30. Finjan did not accuse Symantec of infringing that patent until fourteen years later on September 11, 2014. *Id.* at 17-18 (Count 1). Similarly, Finjan waited years to assert six other patents at issue in this case:

- the '926 patent issued November 3, 2009; Finjan did not assert it until September 11, 2014 (*id.* at ¶12; pp. 21-24 (Counts III and IV));

- the '996 and '289 patents issued July 13, 2010; Finjan did not assert them until June 30, 2014 (Finjan's Compl. at ¶¶10, 13, Dkt. 1; *id.* at pp. 9-18 (Counts I-IV));

- the '299 patent issued April 19, 2011; Finjan did not assert it until June 30, 2014 (*id.* at ¶16; pp. 18-22 (Counts V and VI));

- the '182 patent issued September 6, 2011; Finjan did not asserted it until June 30, 2014 (*id.* at ¶19; pp. 22-24 (Counts VII and VIII)); and

- the '154 patent issued March 20, 2012; Finjan did not assert it until June 30, 2014 (*id.* at ¶22; pp. 24-25 (Count IX)).

7
SYMANTEC'S REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:14-CV-02998-HSG

The '494 patent is the only patent Finjan asserted against Symantec in the same year that the patent issued. Thus, Finjan's own conduct in waiting years to assert these patents against Symantec undermines any concern about delay if this case is stayed pending Symantec's IPR petitions.

In addition, Finjan could have asserted five of the patents from this case in Finjan's first unsuccessful attempt to litigate patent infringement claims against Symantec. That case was filed in Delaware on July 12, 2010, and Finjan amended its complaint on May 12, 2011. *Finjan, Inc. v. Symantec Corp., et al,* C.A. No. 10-cv-593 (GMS) D.I. 1; 69. Many of the Symantec products Finjan accuses now were released long before Finjan filed even its first complaint in the Delaware case. Cassidy Decl. Ex. 17 at 5-11 (No. 2). Therefore, Finjan could have asserted the '844 patent, the '926 patent, the '996 patent, the '289 patent, and the '299 patent against Symantec in that case, but chose not to. The accused instrumentalities in the Delaware case overlap with the accused instrumentalities here. For example, Finjan has cited the trial transcripts from that case in support of its contentions in this case. *See, e.g.,* Cassidy Decl. Ex. 15 at 19-20 (No. 8); Finjan's Opp'n to Mot. to Strike at 18:4-8, Dkt. 83. At least one other court in this district found that a plaintiff's concern of delay under similar circumstances was exaggerated. *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575 EMC, 2014 WL 3107447, at *6 (N.D. Cal. Jul. 3, 2014) (finding "Bosch exaggerates its claimed prejudice; Bosch failed to assert the patents-in-suit – which had been issued by the time the First case was filed – in the First Case[,]" and that it was "undisputed that the patents asserted in the First Case relate to the same product line as the patents in this suit, yet it did not assert the patents-in-suit therein"). Finjan's concern of delay is equally overstated.

***Third,*** Finjan argues that Symantec is improperly colluding with Proofpoint to take "three bites at the apple" to invalidate Finjan's patents. Opp'n at 5-7. That argument makes little sense given the number of companies Finjan has sued for patent infringement. *See e.g.* Dkt 63 at 7-8, Exhibit C. Each of those defendants, not just Proofpoint and Symantec, have challenged Finjan's patents either through litigation or by filing IPR petitions. Furthermore, the cost and ultimate outcome of Finjan's first unsuccessful campaign against Symantec is highly relevant here. All of

8
SYMANTEC'S REPLY IN SUPPORT OF MOTION TO STAY
Case No. 3:14-CV-02998-HSG

1  the patents Finjan asserted against Symantec in that case were found invalid.  Cassidy Decl. Ex.
2  16.  Symantec incurred significant expenses litigating, trying, and opposing Finjan's appeal in that
3  case.  Given Finjan's track-record against Symantec, and the track-record of the patents Finjan
4  chooses to assert, Symantec asks the Court to stay this case so Symantec can efficiently and cost-
5  effectively test the validity of Finjan's patents, notwithstanding what any other current Finjan
6  defendant has done.

       Symantec's filing of the IPR petitions is both proper and in accord with the patent laws. Given the early stage of this case and Finjan's track-record against Symantec, Symantec's Motion to Stay is not gamesmanship, but rather appropriate and well supported under the law.

## II. CONCLUSION

Staying this case will ensure that this litigation is resolved as efficiently as possible. Symantec respectfully asks the Court to immediately stay this litigation pending the PTAB's resolution of Symantec's IPR petitions.

| | | |
|---|---|---|
| 1 | DATED: September 10, 2015 | Respectfully submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 3 | | |
| 4 | | By */s/ Kate E. Cassidy* |
| | | Kate E. Cassidy |
| 5 | | |
| 6 | | Alexander Rudis (*pro hac vice*) |
| | | alexanderrudis@quinnemanuel.com |
| 7 | | Kate Cassidy (*pro hac vice*) |
| | | katecassidy@quinnemanuel.com |
| 8 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 9 | | 51 Madison Avenue, 22nd Floor |
| | | New York, NY 10010 |
| 10 | | Telephone: (212) 849-7000 |
| | | Facsimile: (212) 849-7100 |
| 11 | | |
| 12 | | Sean Pak (Bar No. 219032) |
| | | seanpak@quinnemanuel.com |
| 13 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | | 50 California Street, 22nd Floor |
| 14 | | San Francisco, California 94111-4788 |
| | | Telephone: (415) 875-6600 |
| 15 | | Facsimile: (415) 875-6700 |
| 16 | | David A. Nelson (*pro hac vice)* |
| | | davenelson@quinnemanuel.com |
| 17 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 18 | | 500 West Madison Street, Suite 2450 |
| | | Chicago, IL 60661 |
| 19 | | Telephone: (312) 705-7400 |
| | | Facsimile: (312) 705-7401 |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |