PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800

Attorneys for Plaintiff
FINJAN, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYMANTEC CORP., a Delaware Corporation,<br><br>Defendant. | Case No.:14-cv-02998-HSG-JSC<br><br>**PLAINTIFF FINJAN, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE PRIOR ART REFERENCES AND INVALIDITY THEORIES FROM EXPERT REPORTS OF DR. RUBIN AND DR. STUBBLEBINE**<br><br>Date:      January 4, 2018<br>Time:      9:00 a.m.<br>Dept.:      Courtroom F, 15th Floor<br>Judge:    Jacqueline Scott Corley |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

I.      INTRODUCTION ......................................................................................................2

II.     STATEMENT OF FACTS ........................................................................................3

        A.      Symantec's Opening Invalidity Reports ......................................................4

        B.      Symantec's First Supplemental Report .........................................................5

        C.      Symantec's Second Supplemental Report .....................................................6

III.    ARGUMENT .............................................................................................................6

        A.      Symantec's First and Second Supplemental Reports Should be Stricken. ......6

                1.      The First and Second Supplemental Reports Should Be Stricken as
                        Untimely. ..........................................................................................7

                2.      Symantec Cannot Show Good Cause to Modify the Scheduling Order. ....9

                3.      The First and Second Supplements are Also Improper under Rule
                        26(e). ...............................................................................................11

                4.      Symantec Did not Have Permission to Supplement and the Court
                        Denied Symantec's One Request to Supplement as "Premature." .........12

        B.      Symantec's Undisclosed References Should be Stricken ...............................13

                1.      The Rubin Thesis Was Not Undisclosed and Not Elected Prior Art. .......13

                2.      The Lunt Reference Should be Stricken as Undisclosed. .......................14

                3.      The "Islam" References Should be Stricken as Undisclosed. .................15

        C.      Symantec's Undisclosed Anticipation and Obviousness Theories Should
                Be Stricken. .............................................................................................16

                1.      Symantec Did Not Disclose Certain Theories for the '844 Patent. .........17

                        (a)     Claim 43 of the '844 Patent ...................................................17

                2.      Symantec Did Not Disclose Certain "Transmitting" Theories for the
                        '926 Patent' ...........................................................................................18

                3.      Symantec Did Not Disclose Certain Theories for the '494 Patent. .........19

FINJAN'S NOTICE OF MOTION                        CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

D.    Symantec's Undisclosed Invalidity Theories on Written Description and Indefiniteness Should Be Stricken And Have Been Waived. ........................................20

1.   Written Description and Indefiniteness Theories Should be Stricken. ....................20

2.   Symantec Waived its Indefiniteness Arguments. ....................................................22

IV.    CONCLUSION ...........................................................................................................................23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Avago Tech. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*,
5
  No. C04-05385 JW (HRL), 2007 WL 2103896 (N.D. Cal. July 20, 2007)................................ 16, 20

6

*Funai Elec. Co. v. Daewood Electronics Corp.*,
7
  593 F. Supp. 2d 1088 (N.D. Cal. 2009) ........................................................................21, 23

8

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ..........................................................................................7

9

*Johnson v. Mammoth Recreations, Inc.*,
10
  975 F.2d 604 (9th Cir. 1992) ............................................................................................9

11

*Keener v. United States*,
  181 F.R.D. 639 (D. Mont. 1998)........................................................................................11

12

*Largan Precision Co. v. Genius Electronic Optical Co.*,
13
  No. 13-cv-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014)....................................16, 23

14

*Life Techs. Corp. v. Biosearch Techs, Inc.*,
  No. C 12-00852 WHA, 2012 WL 4097740 (N.D. Cal. Sep. 17, 2012)....................................14, 15

15

*Luke v. Family Care & Urgent Med. Clinics*,
16
  323 Fed. Appx. 496 (9th Cir. 2009).................................................................................11, 12

17

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
18
  No. 11-cv-5341 YGR, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014)........................................16

19

*Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*,
  No. C-06-1066 PJH (EMC), 2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) ..............................11

20

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
21
  No. C-09-01201 RMW, 2011 WL 11709387 (N.D. Cal. Aug. 19, 2011) ......................................10

22

*Transclean Corp. v. Jiffy Lube Int'l, Inc.*,
23
  474 F.3d 1298 (Fed. Cir. 2007)........................................................................................23

24

*Verinata Health, Inc. v. Sequenom, Inc.*,
  No. C 12-00865 SI, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014)........................................14, 15

25

*Wong v. Regents of Univ. of Cal.*,
26
  410 F.3d 1052 (9th Cir. 2005) ..........................................................................................7

27

28

i

**Statutes**

35 U.S.C. § 112.................................................................................................17, 20, 21

**Other Authorities**

Federal Rule of Civil Procedure 16 ..............................................................................7, 9

Federal Rule of Civil Procedure 26 ................................................................6, 7, 11, 12

Federal Rule of Civil Procedure 37 ...............................................................................6, 7

Patent Local Rule 3-3.................................................................................................*passim*

Patent Local Rule 3-4.................................................................................................7, 19, 20

FINJAN'S NOTICE OF MOTION                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 4, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Magistrate Judge Jacqueline Scott Corley in Courtroom F, 15th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Ave, San Francisco, CA 94102, Plaintiff Finjan, Inc. ("Finjan") shall, and hereby does, move the Court for an order striking and precluding Symantec Corp. ("Symantec") from presenting any evidence on previously undisclosed references and invalidity theories because they were not disclosed in compliance with the Patent Local Rules and the Scheduling Order of the Court.  Symantec disclosed these references and new invalidity theories for the first time in the untimely substantive amendments of Symantec Corp.'s ("Symantec") expert reports of Dr. Avi Rubin and Dr. Stuart Stubblebine for the eight patents asserted in this action, *i.e.*, U.S. Patent Nos. 6,154,844 ("'844 Patent"), 7,613,926 ("'926 Patent"), 7,756,996 ("'996 Patent"), 7,757,289 ("'289 Patent"), 7,930,299 ("'299 Patent"), 8,015,182 ("'182 Patent"), 8,141,154 ("'154 Patent"), and 8,677,494 ("'494 Patent") (collectively, "Asserted Patents").

Specifically, Finjan seeks to strike from the case because Symantec failed to timely and properly disclose in compliance with the Patent Local Rules and/or the Court's Scheduling Order:

- Symantec's September 10, 2017, Supplemental Invalidity Expert Report of Dr. Rubin as not properly disclosed under the Patent Local Rules and the Court's Scheduling Order;

- Symantec's September 29, 2017 "Errata" to Dr. Rubin's Invalidity Expert Report as not properly disclosed under the Patent Local Rules and the Court's Scheduling Order;

- the Rubin Thesis in Rubin Report at ¶¶ 1035, 1058, 1119, 1142, 1199, 1231, 1256, 1291, 1313, 1484, 1548, 1577, 1640, and 1677 as not properly disclosed under the Patent Local Rules and the Court's Scheduling Order;

- the Lunt reference in Rubin Report at ¶¶ 348, 1064-1068, 1143-1147, 1205-1208, 1232-1235, 1314-1318, 1485-1489, 1549-1553, 1578-1581, 1641-1645, and 1678-1681 as not properly disclosed under the Patent Local Rules;

FINJAN'S NOTICE OF MOTION
AND MOTION TO STRIKE

CASE NO.: 14-cv-02998-HSG-JSC

- the Islam reference in Rubin Report at ¶¶ 531-579, 901-920, 1036-1042, 1120-1126, 1169-1244, 1257-1263, 1292-1298, 1338-1344, and 1653-1688 as not properly disclosed under the Patent Local Rules;

- written description and indefiniteness theories in Rubin Report at ¶¶ 2219, 2235, and 2241 as not properly disclosed under the Patent Local Rules;

- written description and indefiniteness theories in Stubblebine Report at ¶¶ 456, 461, and 786 as not properly disclosed under the Patent Local Rules;

- theories related to Claim 43 of '844 Patent in Rubin Report at ¶¶ 464-477, 514-530, 660-673, 761-774, and 847-861 as not properly disclosed under the Patent Local Rules;

- "transmitting" theories related to NAV 4.0 and Swimmer references for the '926 Patent in Rubin Report at ¶¶ 1070-1072, 1149-1151, 1277-1279, and 1319-1322 as not properly disclosed under the Patent Local Rules;

- "Activity Log" theory related to NAV 4.0 in the Rubin Report at ¶¶ 1397-1399 and 1478-1481 as not properly disclosed under the Patent Local Rules.

## I.    INTRODUCTION

Finjan seeks to strike from this new invalidity theories that Symantec disclosed for the first time in untimely expert reports from its invalidity experts, Drs. Rubin and Stubblebine.  These theories, presented for the first time after the Court-ordered deadlines, were not presented in compliance with the Patent Local Rules or the Court's September 14, 2017, Scheduling Order.  Dkt. No. 283.

First, the Court should strike two untimely substantive amendments to Dr. Rubin's opening invalidity expert report of invalidity that Symantec served on September 10, 2017, and September 29, 2017, which was well after the Court deadline of July 31, 2017.  These substantive amendments fail to comply with the Scheduling Order in this case, as well as Symantec's disclosure and discovery obligations pursuant to the Federal Rules of Civil Procedure.  The first amendment to Dr. Rubin's report is entitled Supplemental Expert Invalidity Report ("First Supplemental Report") was served a month and a half *after* the deadline to serve opening expert reports, and only a few days before Dr. Rubin was to be deposed.  The First Supplemental Report was based entirely on information Symantec had in its possession for nearly *twenty* years, but nonetheless had failed to produce to Finjan during

2

fact discovery, such that Finjan learned of such information for the first time with the untimely First Supplemental Report.  Thereafter, Dr. Rubin served on September 29, 2017 ("Second Supplemental Report") a second substantive amendment to his opening report, which was entitled "Errata," which disclosed for the first time new invalidity claims for Claim 11 of the '844 Patent which were not disclosed anywhere in in Dr. Rubin's opening expert report.  This Second Supplemental Report was untimely, as it was served two months after the deadline for opening expert reports, and fifteen days after Finjan deposed Dr. Rubin on his invalidity opinion.  Symantec's attempt to substantively and substantially amend its invalidity case with entirely new invalidity theories without leave of the Court violates this Court's Scheduling Order and the Federal Rules of Civil Procedure.  As both the First and Second Supplemental Reports were untimely, served after the deadlines set forth in the case without leave of Court and, in the case of the Second Supplemental Report, after deposition, they should be stricken in their entirety and should not be presented in any form in this case.

Second, the Court should also strike references and invalidity theories that were not disclosed in Symantec's Invalidity Contentions ("ICs"), or that are otherwise untimely and waived.  Dr. Rubin relies on three new references as prior art and numerous obviousness and anticipation theories that were never disclosed in its ICs.  Symantec also asserts new theories of indefiniteness and written description that were not disclosed.  Furthermore, Symantec attempts to re-raise indefiniteness arguments that were waived because Symantec already agreed that the term had meaning or Symantec did not raise during the claim construction.  For these reasons, Finjan requests the Court to strike these improper supplemental reports, references, and invalidity theories.

## II.     STATEMENT OF FACTS

Finjan accuses Symantec of infringing eight patents.  Ex. 1[1] (Finjan's Final Election of Asserted Claims) at 1.  On January 30, 2015, Symantec served its initial ICs.  Symantec then served Amended Invalidity Contentions on June 8, 2015.  *See* Ex. 2.  On October 9, 2015, the Court stayed

---

[1] All exhibits ("Ex. __") cited herein are to the Declaration of Kristopher B. Kastens in Support of Finjan's Motion ("Kastens Decl.") filed herewith.

FINJAN'S NOTICE OF MOTION                                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

the case pursuant to the numerous *inter partes* reviews ("IPRs") that Symantec filed against Finjan's Patents. Dkt. No. 117. On August 1, 2016, after the IPRs were concluded in favor of Finjan, the Court lifted a stay of this action and entered a Scheduling Order. Dkt. No. 127. The August 1, 2016, Scheduling Order set forth the deadlines to file preliminary and second elections of asserted claims and prior art, and established new deadlines for the parties to file opening and rebuttal expert reports. *Id.* The Scheduling Order was subsequently modified on March 14, 2017, May 30, 2017, July 21, 2017, July 31, 2017, and August 28, 2017, by agreement of the parties to extend some dates related to the service of expert reports to accommodate Symantec. Dkt. Nos. 184, 191, 219, 229, and 252. Finjan served its Final Election of Claims on June 26, 2017 and Symantec served a Corrected Final Election of Prior Art on July 12, 2017. Exs. 1, 3. Ultimately, the parties were ordered to serve opening expert reports on July 31, 2017. Dkt. No. 229.

### A.     Symantec's Opening Invalidity Reports

Symantec served Opening Invalidity Expert Reports ("Opening Reports") for Dr. Rubin and Dr. Stubblebine on July 31, 2017, which contained new references and new invalidity theories that were never disclosed in Symantec's ICs or in Symantec's Final Election of Prior Art. On August 10, 2017, Finjan notified Symantec that its Opening Reports contained undisclosed theories and references, and requested that Symantec agree to withdraw these new and improper references and theories. Ex. 4. Symantec refused to withdraw these undisclosed theories and references.

Finjan proceeded to serve its Rebuttal Validity Expert Reports on August 31, 2017, which included the expert report of Dr. Nenad Medvidovic (the "Medvidovic Rebuttal Report"), in which ████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████     *See, e.g.*, Ex. 5 (Rubin Rpt.) at ¶¶ 320-347, 674-695. In particular, Dr. Rubin relied extensively on a description of the Bloodhound technology that was included in a whitepaper entitled "Understanding Heuristics: Symantec's Bloodhound Technology" (the "Bloodhound WP") to describe the functionality of NAV 4.0's Bloodhound technology. *Id.* However, ████████████████████████████████████████████████

FINJAN'S NOTICE OF MOTION                                     CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

1     ███████████████████████████████████████ Ex. 6 (Medvidovic

2 Rebuttal Rpt.) at ¶¶ 143-147. ████████████████████████████

3 ██████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████ *Id.*

6     **B.**    **Symantec's First Supplemental Report**

7         On September 10, 2017, over two weeks after receiving Dr. Medvidovic's rebuttal report,

8 Symantec served its First Supplemental Report of Dr. Rubin.  Ex.7 ("First Supplemental Report").

9 The Scheduling Order did not contemplate expert reports beyond opening and rebuttal reports,

10 Symantec did not notify Finjan or seek consent before serving the First Supplemental Report, and

11 Symantec did not obtain leave from the Court to modify the Scheduling Order.  Dkt. No. 184; Dkt. No.

12 229. ████████████████████████████████████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████ Ex. 7 (Supp. Rubin

15 Rpt.) at ¶¶ 6-11.  In his First Supplemental Report, Dr. Rubin also cites ***new source code that was***

16 ***never previously produced*** to Finjan for NAV 4.0, including several new directories of source code.

17 Declaration of Michael Lee ("Lee Decl.") filed herewith, ¶ 3; Declaration of Nenad Medvidovic

18 ("Medvidovic Decl.") filed herewith, ¶ 6.  Furthermore, the First Supplemental Report was served only

19 a few days before the scheduled deposition of Dr. Rubin, leaving Finjan with little time to investigate

20 the new material.  Kastens Decl., ¶ 32.

21         On September 11, 2017, Finjan requested that Symantec withdraw the First Supplemental

22 Report because it violated the Scheduling Order, the Patent Local Rules, and the Federal Rules of Civil

23 Procedure.  Kastens Decl., ¶ 33.  Symantec refused to withdraw the substantive amendment to Dr.

24 Rubin's report and attempted to justify its violation of the Scheduling Order by arguing that Finjan did

25 not properly disclose its validity arguments in response to an interrogatory during discovery.  Ex. 8.  In

26 particular, Symantec argued that Judge Corley authorized Symantec to supplement its Opening Expert

27 Report of Invalidity if necessary.  *Id.*  However, during the hearing before Judge Corley, there was no

28

FINJAN'S NOTICE OF MOTION               CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

1  mention that Symantec was authorized to supplement without notice or leave of Court, as the Court

2  specifically notified Symantec that its request was premature and emphasizing that if Finjan's rebuttal

3  report introduced new unforeseeable issues, the parties should meet and confer regarding whether a

4  reply by Symantec was justified.  Ex. 9 (7/18/17 Hearing Tr.) at 27:7-15, 32:5-8.  Despite this clear

5  direction, Symantec did not request the opportunity to serve such a supplemental report and provided

6  no basis for its supplement.

7       **C.**     **Symantec's Second Supplemental Report**

8       On September 29, 2017, Symantec served Finjan with yet another unauthorized substantive

9  amendment to Dr. Rubin's Opening Report.  Ex. 10 (Rubin Second Supp. Rpt.).  The Second

10  Supplemental Report, incorrectly entitled an "Errata," introduces new opinions, namely disclosing for

11  the first time new opinions regarding Claim 11 of the '844 Patent.  No such opinions were ever

12  disclosed previously in Dr. Rubin's Opening Report.  On October 2, 2017, counsel for Finjan notified

13  Symantec's counsel that it was "an untimely and impermissible supplement that include[d]… new

14  analysis with respect to claim 11 of the '844 Patent that was not disclosed in Dr. Rubin's opening

15  expert report" and requested that Symantec immediately agree to withdraw the supplement or provide

16  its availability for a meet and confer.  Counsel for Symantec responded that this newly disclosed

17  theory was not included in error and that it was a proper "errata," and would not agree to withdraw the

18  supplement.  Kastens Decl., ¶ 34.

19  **III.**    **ARGUMENT**

20       **A.**     **Symantec's First and Second Supplemental Reports Should be Stricken.**

21       Symantec's First and Second Supplemental Reports should be stricken in their entirety because

22  they were served well after the July 31, 2017, deadline for opening expert reports.  Dkt. No. 223; Fed.

23  R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule

24  26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

25  at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); Fed. R. Civ. P.

26  16(f)(1)(C) (authorizing sanctions against a party who "fails to obey a scheduling or other pretrial

27  order."); *see also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must

28

FINJAN'S NOTICE OF MOTION            CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."). Symantec never sought leave from the Court to modify the Scheduling Order to serve these substantive amendments to its opening reports and did not seek Finjan's agreement for any modification to disclose after the Court's deadlines substantively new invalidity opinions with Dr. Rubin.  The proper remedy for an expert report that is served outside of the schedule provided by the court is to strike the improper supplemental report.  *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.") (citation omitted).

### 1.   The First and Second Supplemental Reports Should Be Stricken as Untimely.

Symantec's First and Second Supplemental Reports should be stricken under Federal Rule of Civil Procedure Rules 37(c)(1) and 16(f)(1) because these supplements violated the Court's Scheduling Order, as they were served well after the Court-ordered July 31, 2017 deadline.  Furthermore, Symantec's failure to disclose the information contained in these amendments during discovery was in violation of Symantec's disclosure and discovery obligations under Patent Local Rule 3-4 and Federal Rules of Civil Procedure 26(a) and (e).  In particular, Symantec's amendments were entirely based on information that was in Symantec's possession for years, if not decades, before it served its opening expert reports.  Thus, Symantec's failure to include in its opening reports the appropriate invalidity disclosures are of its own making.

Specifically, the First Supplemental Report discloses for the first time substantive analysis of previously undisclosed source code of NAV 4.0 because Symantec failed to include any meaningful support for an opinion contained in Dr. Rubin's Opening Report, a fact that Dr. Medvidovic pointed out in his timely served Rebuttal Report.  Only after receiving Dr. Medvidovic's Rebuttal Report did Symantec disclose this source code to Finjan and for the first time, included some analysis and citations to source code for the NAV 4.0 product that was not disclosed in Dr. Rubin's Opening Report.  Since NAV 4.0 is Symantec's product, Symantec simply has no excuse for its untimely

FINJAN'S NOTICE OF MOTION                              CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

amendment to Dr. Rubin's Opening Report because it had direct access to the materials and Symantec engineers well before it served Dr. Rubin's Opening Report.  Ex. 2 (Symantec's Amended Invalidity Contentions) at 8 (identifying Symantec as the party with knowledge of NAV 4.0).  Indeed, the source code Dr. Rubin cites for the first time in his First Supplemental Report was in Symantec's possession and has existed for nearly twenty years.  *See, generally,* Ex. 7 (Supp. Rubin Rpt.).

Symantec failed to produce the following source code which Dr. Rubin identified for the first time in his untimely First Supplemental Report:



Lee Decl., ¶ 3; Medvidovic Decl., ¶ 6; Ex. 7 (Supp. Rubin Rpt.) at ¶¶ 6, 7, 8.  These source code files were key to Dr. Rubin's new opinion and compose the majority of what Dr. Rubin relies on in the First Supplemental Report.  Symantec, however, did not produce these files before Finjan was preparing its rebuttal report, and it was not until after Symantec served Dr. Rubin's First Supplemental Report that Symantec even notified Finjan that these files existed.  Ex. 7 (Supp. Rubin Rpt.) at ¶¶ 6, 7, 8.  Even more troubling is the fact that Dr. Rubin testified that he never reviewed ***any*** NAV 4.0 source code before serving his Opening Report and was not sure if anyone on his team had done so.  Ex. 11 (9/14/17 Rubin Depo. Tr.) at 25:19-23 ("Q: Did you ever review any source code for the NAV 4.0 product? . . . A: I'm not sure if someone on my team reviewed it but I personally did not.").  This testimony speaks volumes because Symantec is attempting to use the First Supplemental Report as a "do over" of Dr. Rubin's infirm opinion in his Opening Report regarding NAV 4.0, with evidence solely in Symantec's possession which Symantec failed to produce to Finjan.

Symantec's service of a belated amendment to Dr. Rubin's report after receiving Finjan's Rebuttal Report and failing to provide Finjan with access to source code during discovery (that Symantec is now attempting to rely upon) severely prejudices Finjan.  Indeed, Symantec prevented Finjan's ability to investigate and respond to this source code.  Lee Decl., ¶ 3; Medvidovic Decl., ¶ 6. Symantec further prejudiced Finjan by waiting two weeks to serve the First Supplemental Report, days

FINJAN'S NOTICE OF MOTION                                      CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

before Dr. Rubin was to be deposed, and curtailing Finjan's ability to address the substance of the First Supplemental Report and the newly disclosed NAV 4.0 source code.

For the Second Supplemental Report, Symantec added for the first time an invalidity analysis for Claim 11 of the '844 Patent and served this amendment to the Opening Report after Finjan deposed Dr. Rubin.  Ex. 10 (Rubin Second Supp. Rpt.).  Dr. Rubin's Opening Report does not even mention this claim or discuss the language of claim element, such that this is nothing more than a substantive and substantial amendment.  *Id.*  Thus, Symantec has no justification for its blatant violation of the Court's Scheduling Order and its untimely disclosure of this new invalidity theory with the Second Supplemental Report.  Moreover, there was no discovery of "new" information that was the impetus of the Second Supplemental Report, as the disclosure only relied on information used in Symantec's Opening Report.  The Second Supplemental Report prejudiced Finjan because it came after Dr. Rubin had already been deposed and Finjan had no opportunity to serve a rebuttal report under the Scheduling Order to this newly disclosed opinions.

### 2.    Symantec Cannot Show Good Cause to Modify the Scheduling Order.

To serve supplemental expert reports, Symantec was required to first obtain the Court's consent upon a showing of good cause to modify the case Scheduling Order prior to serving the supplements. Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  As discussed further below, Symantec's substantive amendments are based on Symantec's shortcomings in its opening reports, which is the result of Symantec's carelessness or oversight.  In any case, Symantec cannot establish "good cause" because "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.") (citations omitted); *see also Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. C-09-01201 RMW, 2011 WL 11709387, at *5 (N.D. Cal. Aug. 19, 2011) ( "Spinal Kinetics offers no excuse for its violations of the court's Scheduling Order and the Patent Local Rules. All of the information needed to support these anticipation and priority theories have been in Spinal Kinetics'

FINJAN'S NOTICE OF MOTION                          CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

possession since the case was filed.  For this reason alone, Spinal Kinetics' motion is denied.").  As

such, Symantec has no good cause for its untimely amendments to its opening report.

For example, Symantec does not have good cause to amend Dr. Rubin's Opening Invalidity

Expert Report without leave and with citations to new source code for the NAV 4.0 that it solely

possessed and was never disclosed to Finjan during discovery.  Symantec cannot now argue that it did

not anticipate it would need to actually prove that NAV 4.0 included the Bloodhound technology

described in the Bloodhound WP, as Symantec always had the burden of proving the operation of

NAV 4.0.  As Dr. Rubin testified during his deposition, the source code for a product is what

establishes how the product actually operates.  Ex. 11 (9/14/17 Rubin Depo. Tr.) at 20:14-17.

Symantec possessed this source code from the date it was written, which was in 1997, and Dr. Rubin's

failure to establish the operation of NAV 4.0 in his Opening Report does not establish "good cause" for

an untimely amendment.

Similarly, Symantec did not have good cause to serve a Second Supplemental Report for Dr.

Rubin, one that attempts to add new invalidity theories for Claim 11 of the '844 Patent.  Symantec

cannot substantively amend an Opening Report with new theories that were not disclosed in the

Opening Report.  To the extent Symantec just "forgot" to include an invalidity theory for Claim 11 of

the '844 Patent, that is not sufficient to establish good cause, as it demonstrates Symantec's lack of

care and diligence, and only prejudices Finjan.  Dr. Rubin, in his Second Supplemental Report,

attempts to incorporate by reference his general description of the prior art in Section IX of his

Opening Report into his purported "claim by claim" analysis of the '844 Patent in Section X.  Ex. 10

(Rubin Second Supp. Rpt.) at ¶ 5.  Before the Second Supplemental Expert Report, Dr. Rubin did not

address how *any reference* allegedly invalidates Claim 11 (*i.e.*, "The method of claim 1, wherein the

first Downloadable security profile includes a list of operations deemed suspicious by the inspector."),

and had no analysis related to this claim.  *See e.g.*, Ex. 5 (Rubin Rpt.) at ¶¶ 443-446; Ex. 6

(Medvidovic Rebuttal Rpt.) at ¶ 227.  As Finjan's expert addressed Claim 11 of the '844 Patent and

Finjan elected this claim in its Final Election of Asserted Claims, Symantec was on notice that Finjan

was asserting this claim in the case.  To the extent Symantec intended to present an invalidity

FINJAN'S NOTICE OF MOTION                                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

1   challenge to this claim, it was supposed to be included in Dr. Rubin's Opening Report, not in some

2   amendment served after Dr. Rubin's deposition.  Ex. 1 (Finjan's Final Election of Asserted Claims) at

3   1.  Such carelessness and lack of care, particularly serving such an amendment so late, demonstrates

4   that there is simply no good cause for Symantec to attempt to modify Dr. Rubin's opinion so late after

5   expert depositions have taken place.

6             **3.**               **The First and Second Supplements are Also Improper under Rule 26(e).**

7           Dr. Rubin's supplements are also not allowed as mandatory supplements under Rule 26(e) of

8   the Federal Rules of Civil Procedure.  The supplements do not meet this rules because they do not

9   correct an inaccuracy in Dr. Rubin's Opening Expert Report and were based on information already

10  available to Symantec at the time of the reports.  The requirement to supplement under Rule 26(e) is

11  narrow and allows an expert to supplement upon "learn[ing] that in some material respect the

12  disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1).  Under this rule, Symantec

13  could only supplement to: (1) correct inaccuracies; or (2) add information that was not available at the

14  time of the initial report.  *Luke v. Family Care & Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th

15  Cir. 2009) ("[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices

16  of an incomplete report based on information that was not available at the time of the initial

17  disclosure") (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)).  Symantec's

18  First and Second Supplemental Reports do not meet either requirements because both added to Dr.

19  Rubin's opinion using information that was available to Dr. Rubin when Symantec served his Opening

20  Report.  *Medtronic Vascular, Inc. v. Abbott Cardiovascular Sys., Inc.*, No. C-06-1066 PJH (EMC),

21  2008 WL 4601038, at *1 (N.D. Cal. Oct. 15, 2008) ("Case law interpreting [Rule 26(e)] reflects that a

22  supplemental disclosure must be exactly that— *i.e.*, a supplement.  A party may not rely on Rule

23  26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new

24  report."); *Luke*, 323 Fed. Appx. at 500  (supplementation is not "a loophole through which a party who

25  submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her

26  opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after

27  the court's deadline for doing so has passed.").  As both the First and Second Supplemental Reports

28

FINJAN'S NOTICE OF MOTION
AND MOTION TO STRIKE
                    CASE NO.: 14-cv-02998-HSG-JSC

actually disclose for the first time new arguments and theories that were not included in Dr. Rubin's Opening Report, neither are allowed under Federal Rule of Civil Procedure Rule 26(e).

With respect to Dr. Rubin's Second Supplemental Report, this amendment is Symantec's attempt to remedy Dr. Rubin's Opening Report to add a theory of invalidity for Claim 11, which is not permitted. Because the Second Supplemental Report does not change inaccurate information, there are no grounds for such an untimely and substantive disclosure. For these reasons, Symantec cannot evade the strictures of the Court's Scheduling Order by miscasting its Second Supplemental Report as a supplement under Rule 26(e).

### 4. Symantec Did not Have Permission to Supplement and the Court Denied Symantec's One Request to Supplement as "Premature."

Symantec was never given permission from the Court to serve supplemental reports or substantive amendments to its expert reports. In fact, the only time that Symantec raised a possibility of a supplemental report was during a hearing on July 18, 2017, where Symantec argued it may need to serve a supplemental report to respond to Finjan validity arguments. However, the Court denied Symantec's request as premature at that time and directed Symantec to first meet and confer regarding whether a supplemental report by Symantec was justified:

> I think it's premature in the sense that when you get it, if they say something that you say that you weren't aware of before, so your expert wasn't able to anticipate it -- then bring that to their attention. If that's true, then you should allow them to do a rebuttal. If you disagree, then you can bring it.
>
> * * *
>
> So you're going to get your report. You're going to get their report. You're going to get their report, and then see if you can work it out with this in the background . . .

Ex. 9 (7/18/17 Hearing Tr.) at 27:7-15, 32:5-8. By failing to contact Finjan or obtain leave from the Court, Symantec disregarded the Court's Scheduling Order and Judge Corley's instructions. In addition, Symantec's failure to establish that the product actually operated in the manner specified was

FINJAN'S NOTICE OF MOTION
AND MOTION TO STRIKE

CASE NO.: 14-cv-02998-HSG-JSC

not only foreseeable, but a basic requirement of proving invalidity, and therefore does not justify

amending its Opening Report with substantive information that it had in its possession.

In addition, Symantec's sole basis for requesting to supplement at the hearing was an alleged

deficiency in Finjan's response to Symantec's interrogatory directed to why the patents were valid.

However, Finjan's response would not have had been a basis for Symantec to supplement because

Finjan could not have anticipated the arguments Dr. Rubin made that it was responding to, as

Symantec's ICs for NAV 4.0 only included screenshots.  Indeed, Symantec's IC's for NAV 4.0 were

silent regarding the NAV 4.0 source code or the specific technology on which Symantec was relying.

Exs. 23, 24, 26.  As such, Finjan did not even know the specific functionality that Symantec was

alleging met the claim elements until after Symantec served Dr. Rubin's Opening Expert Report and

thus, could not have provided any specific information regarding this functionality in its interrogatory

response.  Finjan's ability to point out Symantec's lack of evidence in supporting the operation of

NAV 4.0 does not entitle Symantec to get a second bit at trying to improve its inform expert

disclosures with the benefit of hindsight.

**B.      Symantec's Undisclosed References Should be Stricken**

Symantec should be precluded from presenting at trial with Dr. Rubin or any other witness: (1)

references that were not disclosed in Symantec's ICs, (2) indefiniteness and written description

theories that were not disclosed in Symantec's ICs, and (3) anticipation and obviousness theories that

were not disclosed in Symantec's ICs.

**1.      The Rubin Thesis Was Not Undisclosed and Not Elected Prior Art.**

Dr. Rubin's thesis paper, titled "Nonmonotonic Cryptographic Protocols" ("Rubin Thesis"),

should be stricken from Dr. Rubin's Opening Report because this paper was not disclosed anywhere in

Symantec's ICs or included it in its Final Election of Prior Art, as required by the Court's Order.

*Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at *1-3, 5, 7-8 (N.D.

Cal. Aug. 20, 2014) (striking from expert report a reference that was not charted); *Finjan, Inc. v.*

*Proofpoint, Inc.*, No. 13-cv-05808-HSG, Dkt. No. 271 at 6 (N.D. Cal. Dec. 4, 2015) (striking prior art

references not identified in an election of prior art) (Ex. 12).  Despite the Rubin Thesis not being

disclosed in Symantec's ICs or in its Final Election of Prior Art, Dr. Rubin identifies his thesis as allegedly establishing that elements in the '844, '926, and '494 Patents were met by the prior art, going beyond what could be considered as "background."  Ex. 5 (Rubin Rpt.) at ¶¶ 1035, 1058, 1119, 1142, 1199, 1231, 1256, 1291, 1313, 1484, 1548, 1577, 1640, 1677.  In particular, Dr. Rubin refers to the Rubin Thesis to establish the disclosure of elements related to databases, database managers, and hashing were well known in the art.  *Id.*  As such, the Rubin Thesis should be struck from Dr. Rubin's report as a violation of disclosure under the Patent Local Rules and as a violation of the Court's order for electing prior art.

### 2.      The Lunt Reference Should be Stricken as Undisclosed.

The paper "A Prototype Real-Time Intrusion Detection Expert System" ("Lunt Reference"), should also be stricken from Dr. Rubin's Invalidity Report for the '926 and '494 Patents because Symantec did not chart the Lunt Reference in its ICs.  Patent Local Rule 3-3(c) requires that prior art utilized for claim elements be included in an invalidity chart, and Symantec never sought to correct its charts to include the Lunt Reference, even after serving two supplements to its ICs.  *See Life Techs. Corp. v. Biosearch Techs, Inc.,* No. C 12-00852 WHA, 2012 WL 4097740, at *3 (N.D. Cal. Sep. 17, 2012) (striking from expert report invalidity theory that was not charted); *see also Verinata Health*, 2014 WL 4100638, at *1-3, 5, 7-8 (same).  In fact, Symantec only mentions the Lunt in passing in its ICs, but Symantec fails to connect Lunt to any specific theory in its claim charts.  Ex. 2 (First Amended Invalidity Contentions) at 16, 20-21, and 73.  Symantec was well aware of this deficiency before it served its Opening Invalidity Expert Reports, as Finjan notified Symantec that its election of the Lunt Reference in its Final Election of Prior Art was improper and that Finjan would seek to strike the reference if Symantec relied on it for expert reports.  Ex. 13.  In response, Symantec conceded that it did not chart the Lunt reference, but argued, contrary to the case law in this District, that listing the Lunt Reference in Symantec's cover pleading was sufficient disclosure under the Patent Local Rules.  Ex. 14.  As such, the Lunt Reference should be stricken from Dr. Rubin's expert report because Symantec did not chart the Lunt Reference in its ICs as required by Patent Local Rule 3-3(c).

1

### 3.     The "Islam" References Should be Stricken as Undisclosed.

2

In addition, the Court should strike from Dr. Rubin's Opening Invalidity Report any reliance on

3

what he refers to as the "Islam" reference because Symantec did not chart the reference in its ICs and

4

did not chart any portion of the material that it now relies on.  *See Life Techs.*, 2012 WL 4097740, at

5

\*3 (striking from expert report invalidity theory that was not charted); *see also Verinata Health, Inc. v.*

6

*Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 4100638, at \*1-3, 5, 7-8 (N.D. Cal. Aug. 20, 2014)

7

(same).  In particular, while Symantec did chart a reference called "Islam," Dr. Rubin relies on a

8

***different*** Islam reference that was not charted.  *Compare* Exs. 15-17 ( '844, '926, '494 Islam charts) to

9

Ex. 5 (Rubin Rpt.) at ¶ 309.  The "Islam" reference that Symantec charted in its ICs has the production

10

stamp SYM-FIN0426016-30 (referred herein as "Islam 1").  Ex. 18.  The Islam reference that Dr.

11

Rubin relies on in his Opening Expert Report of Invalidity has production stamp of FINJAN-SYM

12

162729-36 (referred herein as "Islam 2")[2].  Ex. 19.  While Islam 1 and Islam 2 include some

13

overlapping material, they diverge significantly at the end of each reference.  In particular, Dr. Rubin

14

relied almost exclusively on "Table 1" in Islam 2 in his Opening Invalidity Expert Report, which is not

15

in Islam 1.  *Compare* Ex. 19 (Islam 2) at FINJAN-SYM 162735-36 with Ex. 18 (Islam 1) at SYM-

16

FIN0426026-28; *see also* Ex. 5 (Rubin Rpt.) at ¶ 318; Ex. 6 (Medvidovic Rebuttal Rpt.) at ¶ 151.

17

Table 1 in Islam 2 is central to Dr. Rubin's argument regarding the '844, '926, and '494 Patents

18

regarding the "security profile" elements and is the sole basis that he concludes that the "security

19

profile" elements are met based on the reference.  Ex. 5 (Rubin Rpt.) at ¶¶ 318, 541, 554, 556, 575,

20

1193-1194, 1225-1226, 1670-71, 1688.  While Dr. Rubin relies on Table 1 in Islam 2 for his analysis

21

in his Opening Expert Report, Symantec never once described the table in its ICs, demonstrating that

22

Islam 2 was not properly disclosed.  *See e.g.*, Ex. 16 ('926 Patent Islam chart) at 38-40.  The page

23

numbering and inclusion of blue URL links that are only present in Islam 1 also shows that Symantec

24

did not chart Islam 2, but Islam 1.  In particular, Islam 1 came from the IBM website and includes

25

distinctive hyperlinks that and are not present in "Islam 2":

26

_____

27

[2] Islam 2 is also referred to in the expert reports as "Anand."

28

FINJAN'S NOTICE OF MOTION                                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

and execution information (analogous to PEM[5] or BETSI[15] certificates). Figure 2 shows various fields of the content stamp. In general, the content stamp is divided into two parts: (1) the *authenticator*, which provides information for authenticating the stamp and the content, and (2) the *tag* which provides descriptive information used to determine how to execute the content.

Islam at 5

Content-rating services may sign manufacturer's stamps or create their own to annotate or revise the information in the manufacturer's stamp. For example, the content-rating service may provide PICs rating information (see http://www.w3.org/pub/WWW/PICS/) about the content or revise its protection domain. The content-rating services

Ex. 16 ('926 Patent Islam chart) at 7; *id.* at 1 (noting that Islam 2 was a different version).

As such, Dr. Rubin should be precluded from relying on the Islam 2 reference because it was not properly disclosed or charted in Symantec's ICs.  Moreover, because Table 1 does not exist in Islam 1, Dr. Rubin's reliance on it must necessarily constitute a new undisclosed theory and should be stricken from his report.  *See Largan Precision Co. v. Genius Electronic Optical Co.,* No. 13-cv-02502-JD, 2014 WL 6882275, at *3-4 (N.D. Cal. Dec. 5, 2014) (striking expert report relying on portions of prior art reference uncited in invalidity chart and undisclosed theories).

### C.      Symantec's Undisclosed Anticipation and Obviousness Theories Should Be Stricken.

Dr. Rubin asserts a number of new invalidity theories that were never disclosed in Symantec's ICs.  Patent Local Rule 3-3(c) requires "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found," and Courts will strike expert opinions that rely on theories and portions of references not disclosed in these charts.  *See Largan Precision*, 2014 WL 6882275, at *3-4 (striking expert report relying on portions of prior art reference uncited in invalidity chart and undisclosed theories); *see also MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 690161, at *2, 4-5 (N.D. Cal. Feb. 21, 2014) (same); *Avago Tech. Gen. IP PTE Ltd. v. Elan Microelectronics Corp.*, No. C04-05385 JW (HRL), 2007 WL 2103896, at *2 (N.D. Cal. July 20, 2007) (striking expert report reliance on citations not cited in invalidity charts). Dr. Rubin relied on several previously uncited or unidentified theories regarding the Asserted Patents that should therefore be stricken.

FINJAN'S NOTICE OF MOTION                          CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

1

       **1.**      **Symantec Did Not Disclose Certain Theories for the '844 Patent.**

2

         **(a)**      **Claim 43 of the '844 Patent**

3

     Dr. Rubin's opinion regarding Claim 43 of the '844 Patent should be stricken because

4

Symantec did not address this claim in its ICs.  Under Patent Local Rule 3-3(c), Symantec was

5

required include in its charts "for each limitation that such party contends is governed by 35 U.S.C. §

6

112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the

7

claimed function."  However, Symantec's ICs do not identify Claim 43 as a means-plus-function term

8

as required in Patent Local Rule 3-3(c), nor chart the actual claim language of Claim 43, as is also

9

required by Patent Local Rule 3-3(c).  Instead of addressing the claim language for Claim 43 in its

10

invalidity charts, Symantec repeats the claim language of Claim 41, a different claim that does not

11

include any means-plus-function elements.  *See e.g.*, Ex. 20 ('844 Patent) at Claim 41 and 43; *see also*

12

Ex. 21 (Corrected Nachenberg Chart) at 267-268.  As shown in the example below, Symantec recites

13

under the "Claim 43" header in its charts the language of Claim 41:

14

15

16

| Claim 43 | Nachenberg '008 AND ALTERNATIVE COMBINATION REFERENCES |
|---|---|
| [43A] A computer-readable storage medium storing program code for causing a data processing system on an inspector to perform the steps of: | To the extent that this preamble may be construed to be limiting, Nachenberg '008 discloses a computer-readable storage medium storing program code for causing a data processing system on an inspector to perform steps, for example:<br><br>*See* [1A] |
| [43B] receiving a Downloadable; | Nachenberg '008 discloses receiving a Downloadable, for example:<br><br>*See* [1B] |
| [43C] generating a first Downloadable security profile that identifies suspicious code in the | Nachenberg '008 discloses generating a first Downloadable security profile that identifies suspicious code in the received Downloadable, for example: |
| received Downloadable; and | *See* [1C] |
| [43D] linking the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients. | Nachenberg '008 discloses linking the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients, for example:<br><br>*See* [1D] |

17

18

19

20

21

22

23

Ex. 21 (Corrected Nachenberg Chart) at 267-268 (emphasis added).  Because Symantec failed to

24

provide an invalidity theory regarding Claim 43 of the '844 Patent in its invalidity charts, Symantec's

25

expert should be precluded from testifying on his undisclosed theories regarding that claim.

26

27

28

FINJAN'S NOTICE OF MOTION                CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

### 2. Symantec Did Not Disclose Certain "Transmitting" Theories for the '926 Patent'

Dr. Rubin's includes in his Opening Expert Report of Invalidity new obviousness theories for claims 15 and the 22 of the '926 Patent that were not disclosed on Symantec's ICs and should be stricken.  *See Finjan Inc. v. Sophos, Inc.*, No. 14-cv-01997 WHO, Dkt. No. 205 at 24 (N.D. Cal. May 24, 2016) (Ex. 22) (striking invalidity theory not disclosed in invalidity contentions).  In particular, for each of the following references—NAV 4.0 and Swimmer—Dr. Rubin provided a new theory for the "transmitting"[3] element that was not disclosed in Symantec ICs and relies on a manual that was not properly produced.  In his Opening Expert Report of Invalidity, Dr. Rubin argues that these "transmitting" elements are met because a "User's Guide" for Symantec's NAV 4.0 (i.e., the document referenced as "AV4G.pdf") describes a "Potential Virus Submission Procedure" for sending potential viruses to researchers by mailing a submission form and a diskette to them via the mail (e.g. the U.S. Postal Service).  Ex. 5 (Rubin Rpt.) at ¶¶ 1070-1072, 1149-1151, 1277-1279, 1319-1322; Ex. 27, (Norton Antivirus User's Guide) at 11 (Potentially Virus Submission Procedure form include mail address for submission).  This theory of transmitting a file on a disk through the U.S. Postal Service is a brand new theory and is unrelated to the citations provided Symantec in its ICs, which all relate to the scanning of a file.  For NAV 4.0, Symantec only includes in its ICs snippets from a white paper discussing static and dynamic heuristic scanning and running a macro in a virtual environment.[4]  Ex. 23 (NAV 4.0 IC for '926) at 143-145.  Nowhere does Symantec discuss in its ICs the prospect of physically mailing a file on a disk to Symantec or that this would constitute "transmitting" under the claims.  Symantec cites nothing in its ICs that relates to transmitting a virus to virus researchers using the U.S. Postal Service and the theory should be stricken.

---

[3] Claim 15 of the '926 Patent requires the claim element "transmitting the incoming Downloadable and a representation of the retrieved Downloadable security profile data to a destination computer, via a transport protocol transmission."  Claim 22 of the '926 Patent requires "a transmitter coupled with said receiver, for transmitting the incoming Downloadable and a representation of the retrieved Downloadable security profile data to a destination computer, via a transport protocol transmission."  For simplicity, Finjan will refer to these elements as the "transmitting" element.

[4] For both "transmitting" elements of Claim 15 and Claim 22, Symantec's ICs reiterate its prior "analysis" from Claim 1(f).  Ex. 23 (NAV 4.0 IC for '926) at 291, 293.

FINJAN'S NOTICE OF MOTION                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

1    This theory should also be stricken because none of the documents Symantec produced with its

2    ICs include a description of this mail submission process.  Dr. Rubin relies on a User's Guide (*i.e.*,

3    AV4G.pdf) for this element, but this document was not produced until June 15, 2017, over two years

4    after Symantec's Invalidity Contentions in violation of Patent Local Rule 3-4(b).  *See Finjan Inc.v.*

5    *Blue Coat Sys*, 5:13-cv-03999-BLF, Dkt. No. 367 at 5 (N.D. Cal. July 8, 2015) (Ex. 28) (granting

6    motion *in limine* preventing expert from testifying on a prior art reference for failure to produce

7    document in compliance with Patent Local Rule 3-4(b)).

8    As such, the Court should strike Dr. Rubin's expert report regarding invalidity of the

9    "transmitting" elements based on NAV 4.0 and Swimmer.

10    **3.    Symantec Did Not Disclose Certain Theories for the '494 Patent.**

11    Dr. Rubin's opinion regarding the alleged practicing of a "database manager" by NAV 4.0

12    should be stricken because Symantec did not disclose this in its ICs.  Claim 10 of the '494 Patent

13    includes the element "a database manager coupled with said Downloadable scanner, for storing the

14    Downloadable security profile data in a database" (the "database manager" element).  Symantec's ICs

15    disclose only excerpts from a white paper on Bloodhound.  Ex. 24 (NAV 4.0 IC for '494) at 68-71.

16    Dr. Rubin's report cites to an "Activity Log" for the "database manager" in NAV 4.0, which is not

17    mentioned at all in any of the excerpts cited by Symantec in its ICs.  In particular, Dr. Rubin cites to a

18    manual (*i.e.*, NAV95REF.pdf) describing an "Activity Log" that has no relationship to Bloodhound,

19    and in fact, predates any possible inclusion of Bloodhound technology in NAV 4.0.  Ex. 5 (Rubin Rpt.)

20    at ¶¶ 1397-1399, 1478-1481; *see also* Ex. 6 (Medvidovic Rebuttal Rpt.) at ¶ 1284 (noting that the

21    image of the Activity Log predates alleged priority date of Bloodhound by approximately two years).

22    As such, the Court should strike Dr. Rubin's expert report regarding using an "Activity Log" as

23    allegedly showing the "database manager" element based on NAV 4.0.

24    In addition, the manual (*i.e.*, NAV95REF.pdf) that Symantec relies on, was only produced on

25    June 15, 2017, over two years after it was required to be produced with Symantec's ICs and therefore

26    in violation of Patent Local Rule 3-4(b).  Thus, Symantec's expert report's citation to regarding NAV

27    4.0 and Activity Log should also be stricken for that reason as well.  *See Finjan Inc.v. Blue Coat Sys*,

28

19

5:13-cv-039999-BLF, Dkt. No. 367 at 5 (N.D. Cal. July 8, 2015) (Ex. 28) (granting motion *in limine* preventing expert from testifying on a prior art reference for failure to produce document in compliance with Patent Local Rule 3-4(b)).

### D. Symantec's Undisclosed Invalidity Theories on Written Description and Indefiniteness Should Be Stricken And Have Been Waived.

#### 1. Written Description and Indefiniteness Theories Should be Stricken.

Drs. Rubin and Stubblebine assert for the first time in their reports that the claims of the '289, '182, and '996 Patents are invalid under 35 U.S.C. § 112 based on lack of written description and indefiniteness. These indefiniteness invalidity theories were not disclosed in Symantec's ICs as required by Patent Local Rule 3-3(d) and they should be stricken from the case. *Finjan, Inc. v. Proofpoint, Inc.*, No. 3:13-cv-05808-HSG, Dkt. No. 290 at 4-6 (N.D. Cal Dec. 23, 2015) (Ex. 29) (striking indefiniteness and written description arguments in expert report not disclosed in invalidity contentions); *see also Avago Techs.*, 2007 WL 2103896, at *1-2 (same).

With respect to Dr. Rubin's invalidity expert report, Symantec alleges for the first time that the following term of the '289 Patent renders claims invalid under the written description:

- "an input modifier for modifying the input if the input itself includes a call to a second original function with a second input by replacing the call to the second original function with a corresponding call to a second substitute function, the second substitute function being operational to send the second input to the security computer for inspections"

*See* Ex. 5 (Rubin Rpt.) at ¶ 2235; *see also* Ex. 2 (Symantec's Amended Invalidity Contentions) at 40-41. In its ICs, Symantec listed numerous other terms that it contended did not meet the written description requirement but did not identify this element. Ex. 2 (Symantec's Amended Invalidity Contentions) at 40-41. Similarly, Symantec raises for the first time in Dr. Rubin's report that the '289 Patent is indefinite due to the recitation of the following terms in the asserted claims:

- "the security computer"

*See* Ex. 5 (Rubin Rpt.) at ¶ 2241; *see also* Ex. 2 (Symantec's Amended Invalidity Contentions) at 40-41. While Symantec included in its ICs several longer claim elements that were allegedly indefinite

FINJAN'S NOTICE OF MOTION                                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

and that incorporated the term "security computer," these were identified based on the inclusion of additional language and not because they included "security computer."  In particular, Symantec did not identify any element that only included the term "security computer," and instead the term was only included as a small part of a longer claim element. Ex. 30, '289 Patent, Claim 10.  As such, Dr. Rubin's opinion regarding the alleged lack of written description of this element should be stricken.

With respect to Dr. Stubblebine's invalidity expert report, he also includes undisclosed 35 U.S.C. § 112 opinions that should be excluded.  *Funai Elec. Co. v. Daewood Electronics Corp.*, 593 F. Supp. 2d 1088, 1102 (N.D. Cal. 2009) (finding waiver of indefiniteness theory based on claim differentiation that was not identified in invalidity contentions).  Symantec raises for the first time that Claim 8 of the '182 Patent is indefinite due to the following term:

> • "a client computer … that dynamically generates a combined search and security results summary that presents the at least a portion of the identified web content, while some of the assessments of potential security risks have not yet been received from the content scanner, that dynamically updates the combined search and security results summary, by presenting potential security risks of the presented web content, after the assessments of potential security risks are received from the content scanner"

*See* Ex. 25 (Stubblebine Rpt.) at ¶ 461; *see also* Ex. 2 (Symantec's Amended Invalidity Contentions) at 56.  Symantec did not include this element in its ICs for indefiniteness, and the only indefiniteness argument it made for this claim relates to its allegation that it "impermissibly combine a system … and a method," which is not addressed in Dr. Stubblebine's Opening Expert Report of Invalidity.  Ex. 2 (Symantec's Amended Invalidity Contentions) at 57.  Dr. Stubblebine also opines for the first time that the following terms of Claim 1 of the '996 Patent are indefinite and render the claim invalid:

> • a gateway data embedder configured to insert the server-originated non-HTTP management data within the server-originated HTTP message;
>
> • a client data extractor configured to extract the server-originated non-HTTP management data from within the server-originated HTTP message;

FINJAN'S NOTICE OF MOTION                                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

- a client data embedder configured to insert client-originated non-HTTP management data within a client-originated HTTP message; and

- a gateway data extractor configured to extract the client-originated non-HTTP management data from the client-originated HTTP message.

*See* Ex. 25 (Stubblebine Rpt.) at ¶ 726; *see also* Ex. 2 (Symantec's Amended Invalidity Contentions) at 30. However, in its ICs, Symantec only argued that these terms were indefinite because they were "means-plus-function," a position that Dr. Stubblebine does not raise in his Opening Expert Report of Invalidity, and one that Symantec dropped during claim construction. Ex. 2 (Symantec's Amended Invalidity Contentions) at 30; Dkt. No. 68-1 at 21-23. As such, Symantec did not properly identify any of these terms as lacking written description or indefinite in its ICs and Dr. Stubblebine's opinion regarding these terms should be stricken from his report.

As such, the Court should strike these undisclosed theories from Drs. Rubin and Dr. Stubblebine's expert reports because Symantec did not properly disclose them in its ICs.

## 2.    Symantec Waived its Indefiniteness Arguments.

The Court should strike several indefiniteness arguments the Drs. Rubin and Stubblebine raise because the Court already construed these terms and therefore determined that these terms were definite. As such, Symantec was required to pursue any indefiniteness argument for these terms during claim construction and cannot now have its experts opine that the terms are indefinite. Accordingly, the Court should strike these waived arguments from Drs. Rubin and Stubblebine's expert reports.

First, Dr. Rubin opines that the following term of the '844 Patent is indefinite:

- "Downloadable security profile that identifies suspicious code in the received Downloadable"

*See* Ex. 5 (Rubin Rpt.) at ¶ 2219. Dr. Stubblebine also opines that Claim 13 of the '299 Patent is indefinite due to the following term:

- "a client computer … that dynamically generates a combined search and security results summary that presents the at least a portion of the identified web content, while some of the assessments of potential security risks have not yet been received from the content scanner, that dynamically updates the combined search and security results

FINJAN'S NOTICE OF MOTION                                    CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

summary, by presenting potential security risks of the presented web content, after the assessments of potential security risks are received from the content scanner"

*See* Ex. 25 (Stubblebine Rpt.) at ¶ 456.  The Court already issued a Claim Construction Order construing similar terms and did not find these terms indefinite.  *Largan Precision*, 2014 WL 6882275, at *2-3 (striking expert report indefiniteness arguments regarding terms already construed).  In particular, the Court already construed the terms "means for generating a first downloadable security profile that identifies suspicious code in the received downloadable" and "dynamically updat[e/es/ing] the combined search and security results summary," to have a definite meaning, and each of these are contained in the terms identified above.  Dkt. No. 170 at 30.  As the Court already dealt with these terms during claim construction, Symantec should be precluded from attempting to add indefiniteness arguments related to arguments it could have raised during claim construction.  *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (holding that judicial estoppel applies to claim construction if party's new position is "clearly inconsistent" with its prior position and it would derive an "unfair advantage" if not estopped).

The Court should also strike these opinions because Symantec failed to identify its basis for indefiniteness in its ICs.  *Funai Elec.*, 593 F. Supp. 2d at 1102 (finding waiver of indefiniteness theory based on claim differentiation not in invalidity contentions).  Symantec provides no particular theory of indefiniteness or why the terms are indefinite.  Ex. 2 (Symantec's Amended Invalidity Contentions) at 13.  Symantec cannot use an expert report to belatedly introduce new indefiniteness theories that it failed to timely and properly disclose in its ICs or during the claim construction process.

As such, Symantec's indefiniteness arguments for these terms should be stricken.

## IV.   CONCLUSION

For the foregoing reasons, Finjan respectfully requests that the Court strike the expert reports of Symantec and preclude Symantec from asserting new invalidity theories for failing to comply with the Patent Local Rules and the Court's Orders.

FINJAN'S NOTICE OF MOTION                                              CASE NO.: 14-cv-02998-HSG-JSC
AND MOTION TO STRIKE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED:  November 29, 2017

By: _/s/ James Hannah_____
Paul Andre (State Bar. No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

Attorneys for Plaintiff
FINJAN, INC.

24

FINJAN'S NOTICE OF MOTION
AND MOTION TO STRIKE

CASE NO.: 14-cv-02998-HSG-JSC