UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>SYMANTEC CORP.,<br><br>    Defendant. | Case No. 14-cv-02998-HSG (JSC)<br><br>**ORDER RE FINJAN'S MOTION TO STRIKE SYMANTEC'S EXPERT REPORTS**<br><br>Re: Dkt. Nos. 302, 303, 313, 323 |

Plaintiff Finjan Inc. ("Finjan") alleges Defendant Symantec Corporation ("Symantec") infringes several of Finjan's patents. Now pending before the court is Finjan's motion to strike portions of Symantec's expert reports. (Dkt. No. 303.)[1] Having carefully reviewed the parties' briefing and having had the benefit of oral argument on January 25, 2018, the Court GRANTS in part and DENIES in part Finjan's motion.

**BACKGROUND**

On January 30, 2015, Symantec served its initial invalidity contentions. (Dkt. No. 312-5 ¶ 12.) By stipulation Symantec then served amended contentions on June 8, 2015. (Dkt. Nos. 70, 303-5.) After three extensions, the parties were ordered to serve opening expert reports by July 31, 2017. (Dkt. No. 229 at 2.) Symantec served Opening Invalidity Expert Reports ("Opening Reports") for Dr. Rubin and Dr. Stubblebine on July 31, 2017. (Dkt. No. 312-5 ¶¶ 10, 20.) Finjan proceeded to serve its rebuttal expert reports on August 31, 2017, which included the expert report of Dr. Nenad Medvidovic. (Dkt. No. 303-3 ¶ 7.)

On September 10, 2017, two weeks after receiving Dr. Medvidovic's rebuttal report,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Symantec served its first supplemental report of Dr. Rubin. (Dkt. No. 303-3 ¶ 8.) Finjan requested that Symantec withdraw the first supplemental report on the grounds that the Scheduling Order did not contemplate expert reports beyond opening and rebuttal reports. (*See* Dkt. Nos. 184, 229.) Dr. Rubin's deposition was scheduled for September 14, 2017, four days after Symantec produced the supplemental report. (Dkt. No. 303-3 ¶ 32.)

On September 29, 2017, Symantec served a document entitled "Errata to Expert Report of Dr. Avi Rubin." (Dkt. No. 303-13.) Expert discovery closed that same day. (Dkt. No. 283.) Finjan requested that Symantec withdraw the Errata document. (Dkt. No. 303-3 ¶ 34.) After Symantec refused, Finjan filed the instant motion. (Dkt. No. 303.) This case is scheduled for trial in six months, on July 9, 2018. (Dkt. No. 290 at 3.)

**LEGAL STANDARD**

Patent Local Rule 3–3 requires parties accused of infringement to serve invalidity contentions. The invalidity contentions must identify "each item of prior art that allegedly anticipates each asserted claim or renders it obvious." Patent Local R. 3–3(a). Invalidity contentions must contain information on "[w]hether each item of prior art anticipates each asserted claim or renders it obvious." Patent Local R. 3–3(b). If obviousness is alleged, the invalidity contentions must contain "an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness." *Id.* The invalidity contentions must further contain "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found." Patent Local R. 3–3(c).

**DISCUSSSION**

Finjan moves to strike invalidity theories that Finjan alleges Symantec disclosed for the first time in Dr. Rubin' and Dr. Stubblebine's expert reports.

**I.  Finjan's Motion to Strike**

**A.  Symantec's First Supplemental Report and Errata**

Finjan argues Dr. Rubin's supplemental report and errata should be stricken under Federal Rule of Civil Procedure Rules 37(c)(1) and 16(f)(1) because these supplements violated the Court's Scheduling Order and were served after the Court-ordered July 31, 2017 deadline. Finjan

also argues Symantec's supplemental documents violate Patent Local Rule 3-4 which states in relevant part, "[w]ith the 'Invalidity Contentions,' the party opposing a claim of patent infringement shall produce or make available for inspection and copying source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart."

1. *First Supplemental Report*

Finjan argues the first supplemental report discloses for the first time substantive analysis of previously undisclosed NAV 4.0 source code. This code includes:

- NAV 4.0\NEWVIR\source\INCLUDE\src\heurtok.h,
- NAV4\NEWVIR\source\HEUR.DAT\src\heur.prg and
- \NAV4\NEWVIR\source\PAM.DAT\src\heurcomp.cpp.

(Dkt. No. 302-6 ¶ 3 – Lee Decl.) Finjan further argues that only after receiving Dr. Medvidovic's Rebuttal Report did Symantec disclose in Dr. Rubin's unauthorized supplemental report analysis and citations to source code for the NAV 4.0 product. Finjan contends this late disclosure prevented Finjan from investigating and responding to this new theory. Finjan also contends that it never had the opportunity to review the source code cited by Dr. Rubin in violation of Patent Local Rule 3-4.

Symantec responds that it did not withhold the source code during discovery; the source code is on a laptop that was made available to Finjan and this code has been on the computer since May 9, 2014. (Dkt. No. 313-17 ¶¶ 17-19 - Shumway Decl.) Further, it emphasizes that the six page supplement addresses only one issue – rebutting Dr. Medvidovic's assertions in his rebuttal report regarding the NAV 4.0 source code, and that it had to be included in a supplement rather than the opening report because Finjan did not properly disclose all of its validity contentions during discovery.

In his opening report Dr. Rubin opined that the NAV 4.0 with Bloodhound is prior art. Dr. Rubin's supplemental report then adds source code citations to support his opinion in response to Finjan's expert's validity contention, a contention which was not put forth earlier other than to

3

deny that NAV 4.0 is prior art. Given that Dr. Rubin did not add a new theory but rather identified the code associated with his proffered theory, the supplemental report is proper. *See Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014) (concluding that "[t]he threshold question in deciding whether to strike an expert report is, therefore, whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether.") Further, the code cited in the supplemental report does not prejudice Finjan because the code has been available to Finjan since May 2014. (Dkt. No. 313-17 ¶¶ 17-19 - Shumway Decl.) Also, Dr. Rubin was deposed after service of the supplemental report.

Accordingly, Finjan's request that the Court strike Dr. Rubin's supplemental report in its entirety due to its citations to NAV 4.0 source code is DENIED.

2.  *Errata*

Finjan next argues the Court should strike Dr. Rubin's errata because it added for the first time an invalidity analysis for Claim 11 of the '844 Patent and was served after Finjan deposed Dr. Rubin. (*See* Dkt. No. 303-13.) Finjan argues the errata is a substantive amendment because Dr. Rubin's Opening Report did not discuss Claim 11 or the claim element. (*Id.*) Symantec responds: (1) it always asserted that Claim 11 of the '844 patent is invalid, and (2) Dr Rubin's errata does not change Dr. Rubin's invalidity theory as described in his opening report. The Court agrees.

First, Symantec's '844 Patent invalidity contentions chart the references purportedly invalidating Claim 11. (*See* Dkt. No. 312-13 at 2, "Abadi anticipates at least Claims 1, 5-8, *11*, 15, 16, 41, and 43 of the '844 patent" (emphasis added).) Dr. Rubin's report states that Claim 11 of the '844 Patent is invalid. (Dkt. No. 312-14 ¶¶ 7, 8.) Dr. Rubin also reports that NAV-IEG, Islam, and Swimmer disclosed each and every element of Claims 1, 7, *11*, 15, 16, and 43 of the '844 patent. (*Id.* ¶¶ 427, 478, 531.)

Second, Dr. Rubin's errata explains a clerical error and identifies where in his report Finjan can find his opinion regarding the validity of Claim 11 of the '844 patent. (Dkt. No. 312-12 at 4.) Dr. Rubin does not provide any additional information or opinions that were not already disclosed in his timely served invalidity report. (*See id.*) Dr. Rubin represents that his failure to repeat the

4

1 analysis of ¶¶ 306, 318, 346, 365, 383, and 389 in connection with his analysis of NAV-IEG, Islam, and Swimmer was an inadvertent error. (*See id.*) The correction of this clerical error in the errata is proper. *Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.*, 2008 WL 4601038, at *2 (N.D. Cal. Oct. 15, 2008) (concluding an expert can correct honest mistakes when that correction "does not attempt to mask inadequate preparation of the original report" and is "not an attempt … to ambush [the other side]"). Dr. Rubin does not try to include a "substantive revision" or offer "new opinions or conclusions." *See id.*

Accordingly, Finjan's request to strike Dr. Rubin's errata is DENIED.

*3.  Modifying the Scheduling Order, Rule 26(e), and Permission to Supplement*

Finjan also makes two procedural arguments as a basis for the Court to strike the supplemental report and errata. First, Finjan argues that to serve a supplemental expert report, Symantec was required to first obtain the Court's consent upon a showing of good cause to modify the case scheduling order. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). Second, Finjan asserts that under Rule 26(e) of the Federal Rules of Civil Procedure that Symantec could only supplement to: (1) correct inaccuracies; or (2) add information that was not available at the time of the initial report.

Finjan's arguments are unpersuasive. Rule 26(e)(2) provides that supplementation of an expert report must occur "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." As pretrial disclosures are generally due 30 days before trial, *see* Rule 26(e)(3), trial is in July 2018, and Finjan has not identified some other date that the Rule 26(b)(3) disclosures are due, the supplementation is not untimely, *See Enplas Display Device Corporation v. Seoul Semiconductor Company, Ltd.*, 2015 WL 13037241, at *1 (N.D. Cal. Dec. 21, 2015) (concluding the supplemental reports did not change the expert's conclusions and were timely because the reports were supplemented more than 30 days before trial). There is nothing in the district court's scheduling order that suggests that by setting an expert discovery cutoff the district court intended to abrogate Rule 26(e)(2) regarding supplementation. The errata falls squarely within Rule 26(e)(2)'s duty to supplement and thus no permission was required to submit the errata.

While, as explained at oral argument, Symantec should have sought the Court's permission

before filing Dr. Rubin's supplemental report, the Court declines to strike it. *See Illinois Tool Works, Inc. v. MOC Products Co. Inc.*, 2012 WL 3561984, *11 (S.D. Cal. Aug. 12, 2012) (declining to strike supplemental expert report in light of its import to the case and the fact that much of the alleged prejudice was still able to be cured). When Symantec raised the issue of supplementation, Finjan should have agreed given that it had not previously disclosed that it believed the NAV 4.0 product did not include the Bloodhound functionality.

Accordingly, Finjan's request to strike Dr. Rubin's supplemental report and errata on procedural grounds is DENIED.

**B.     Undisclosed References**

Symantec next argues that three references in Dr. Rubin's report should be precluded from trial because they were not disclosed in Symantec's invalidity contentions: (1) Dr. Rubin's thesis paper, "Nonmonotonic Cryptographic Protocols" ("Thesis"), (2) the paper "A Prototype Real-Time Intrusion Detection Expert System" ("Lunt Reference"), and (3) the "Islam" symposium paper ("Islam Reference").

1.     *Dr. Rubin's Thesis*

Finjan argues Dr. Rubin's Thesis should be stricken from Dr. Rubin's Opening Report because this paper was not disclosed anywhere in Symantec's invalidity contentions or in its final election of prior art. Finjan argues that Dr. Rubin identifies his Thesis as allegedly establishing that elements in the '844, '926, and '494 patents were met by the prior art, going beyond what could be considered as "background." Finjan asserts that in particular, Dr. Rubin refers to the Rubin Thesis to establish the disclosure of elements related to databases, database managers, and hashing were well known in the art. Symantec counters that Dr. Rubin does not rely on the Rubin Thesis as prior art, instead the Rubin Thesis simply demonstrates background information about the technology at issue and the state of the art at the relevant time.

After a review of Dr. Rubin's Opening Report and the citations Finjan provides to his Thesis, the Court concludes Dr. Rubin identified his Thesis as background information, not to establish that the elements in the '844, '926, and '494 Patents were met by the prior art. For example, in paragraph 1199, Dr. Rubin states "by 1996, databases were ubiquitous, including for storing security information.

6

For instance, my 1994 PhD thesis, titled *Nonmonotonic Cryptographic Protocols*, discusses a Kerberos database for storing authentication information. My thesis likewise discusses database management systems." (Dkt. No. 302-10 at 43 ¶ 1199.) Research or academic references, other than selected prior art references, are permissible to provide the historical foundation of the prior art. *Genentech, Inc. v. Trustees of University of Pennsylvania*, 2012 WL 424985, at *3 (N.D. Cal. Feb. 9, 2012) (concluding a reference to a particular clinical trial that was not disclosed in the invalidity contentions "does not render it unusable for laying an historical foundation to research that was disclosed"). In the paragraphs Finjan cites, Dr. Rubin refers to his Thesis to show historical context regarding the prior art. Further, at oral argument Symantec confirmed that they are not relying on the Thesis to satisfy any element(3) that render the '844, '926 or '494 patents invalid. Accordingly, Finjan's request that the Court strike references to Dr. Rubin's Thesis is DENIED.

2. *Lunt Reference*

Finjan argues the Lunt Reference should also be stricken from Dr. Rubin's Invalidity Report for the '926 and '494 Patents because Symantec did not chart the Lunt Reference in its invalidity contentions. Finjan asserts that Patent Local Rule 3-3(c) requires that prior art utilized for claim elements be included in an invalidity chart, and Symantec never sought to correct its charts to include the Lunt Reference. Finjan emphasizes that Symantec was well aware of this deficiency before it served its Opening Expert Reports because it notified Symantec in a letter that its election of the Lunt Reference was improper and that Finjan would seek to strike the reference if Symantec relied on it for expert reports. (Dkt. No. 303-16 at 3-4.) Symantec responds that it served amended contentions which included specific claim limitations of the '926 and '494 Patents and described the disclosure from Lunt which satisfies those claim elements. (*See* Dkt. No. 312-6 at 20-21, 78-79.)

The parties do not dispute that Symantec provided information regarding the Lunt Reference in its supplemental invalidity contentions. The issue is whether this disclosure is sufficient under the Patent Local Rules in order for Dr. Rubin to rely upon it in his expert report. Finjan argues the current format is problematic because Symantec did not provide analysis in its actual charts on a limitation by limitation basis. Symantec disagrees, stating the Patent Local

7

Rules do not require a table format, only that the contentions identify where and how in each alleged item of prior art each limitation of each asserted claim is found.

Our District's Patent Local Rules require a "chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found." Patent L.R. 3–3(c). Here, the amended contentions clearly identify Claims, 15, 22, and 30 of the '926 patent and 1, 2, 10, and 11 of the '494 patent. (Dkt. No. 312-6 at 20-21, 78-79.) The amended contentions also state that Lunt "discloses an intrusion detection system called IDES" under the above identified Claims of the '926 and '494 patents. Accordingly, Finjan's request that the Court strike the Lunt Reference in Dr. Rubin's expert report is DENIED.

3. *Islam References*

Finjan argues the Court should strike from Dr. Rubin's Opening Invalidity Report any reliance on what he refers to as the "Islam" reference because Symantec did not chart the reference in its invalidity contentions and did not chart any portion of the material that it now relies on.

The Islam Reference has two formats. One is an online article published by the IBM Thomas J. Watson Research Center in October 1997. (Dkt. Nos. 303-3 at 4 ¶ 19, 303-21.) The same work was presented at a symposium in October 1997. The second format of the Islam Reference is a paper that was distributed at that conference. (Dkt. No. 303-22.) Symantec stated in its invalidity contentions that it would chart the online version of the reference, but that it may also rely on the Symposium version of the reference. (Dkt. No. 312-15 at 2.)

The parties do not dispute that Dr. Rubin referenced the Symposium version of the reference; however, it was the online version that Symantec charted. Symantec argues the disclosure in both articles is materially the same and Symantec specifically reserved its right to rely on the Symposium version; therefore Dr. Rubin should be allowed to reference it in his report. Finjan counters that the two versions are not substantially the same because Dr. Rubin references "Table 1" in the Symposium version which does not appear in the online version and Symantec's failure to chart this reference did not put Finjan on notice of the reference Symantec was relying on.

The Court grants Finjan's request to strike Dr. Rubin's reference to Table 1 of the Islam reference. It is undisputed the table that Dr. Rubin refers to in his report is found in the Symposium

paper that was not charted as required by the local rules. Symantec explains the two documents are similar because the information in Table 1 of the Symposium reference is simply a summary of the online reference and what Symantec disclosed in its claim chart; however, the Court will not engage in such a comparison exercise. Our patent local rules require detailed disclosure of a party's patent invalidity contentions. *Life Technologies Corp. v. Biosearch Technologies*, Inc., 2012 WL 4097740 (N.D. Cal. Sept. 17, 2012). Accordingly, Finjan's request that the Court strike Table 1 of the Islam Reference is GRANTED.

### C. Undisclosed Anticipation and Obviousness Theories

#### 1. *'844 Patent*

Under Patent Local Rule 3-3(c), Symantec was required include in its charts "for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function."

Finjan argues Symantec's invalidity contentions do not identify Claim 43 as a means-plus-function term as required in Patent Local Rule 3-3(c). Finjan insists that Symantec instead repeats the claim language of Claim 41, a different claim that does not include any means-plus-function elements. Symantec responds that while it made a mistake copying the language for Claim 43 of the '844 patent into its claim charts by omitting the words "means for" at the beginning of three of the limitations, the theories Symantec disclosed in that section of the claim charts are correct for Claim 43. Further, Symantec identifies this claim as containing "three means-plus-function limitations, namely 'means for receiving a Downloadable,' 'means for generating a first Downloadable security profile that identifies suspicious code in the received Downloadable,' and 'means for linking the first Downloadable security profile to the Downloadable before a web server makes the Downloadable available to web clients.'" (Dkt. No. 312-6 at 14.) District courts have "wide discretion" in enforcing the patent local rules. *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 9460295, at *1 (N.D. Cal. Dec. 23, 2015) (citing *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005)). Symantec disclosed enough information to put Finjan on notice of the "mean-plus-function" of Claim 43 and Finjan has failed to state how Dr. Rubin's discussion of Claim 43 is prejudicial to Finjan.

United States District Court
Northern District of California

1  Accordingly, Finjan's request that the Court strike Claim 43 from Dr. Rubin's report is
2  DENIED.

3    2. *'926 Patent*

4  Finjan next argues Dr. Rubin's report includes new obviousness theories for Claims 15 and 22
5  of the '926 Patent because Dr. Rubin provided a new theory for the NAV 4.0 and Swimmer references.
6  In particular, Dr. Rubin opines that the NAV 4.0 User Guide requests users submit infected programs
7  to Symantec and that this in turn would provide the motivation to one skilled in the art in support of
8  Symantec's obviousness theory. Finjan argues this theory is unrelated to the citations Symantec
9  provided in its infringement contentions.

10  The Court agrees that Symantec's invalidity contentions did not reference any theory about the
11  NAV 4.0 requesting users to submit infected files to Symantec, by mail or otherwise. Accordingly,
12  this obviousness theory is stricken from Dr. Rubin's Report. Finjan has not shown, however, that
13  Symantec's contentions failed to disclose another motivation for meeting this limitation; namely,
14  Swimmer's discussion of researchers needing viruses for research. The Court declines to strike Dr.
15  Rubin's opinion in that respect.

16  Finally, Finjan also argues that Symantec violated Patent Local Rule 3-4(b) because it did not
17  produce the user guide for AV4G that Dr. Rubin relies on in his report until June 15, 2017 which was
18  over two years after Symantec's invalidity contentions were due. However, on June 8, 2015,
19  Symantec produced a CD with the user guide. (*See* Dkt. No. 312-19, production letter with bates
20  numbers SYM-FIN0622696 to SYM-FIN0623454, *and* Dkt. No. 312-20 (Ex. 16) reflecting user guide
21  with bate stamp SYM-FIN0622696.) Finjan replies that Symantec did not identify the user guide by
22  bates stamp in its infringement contentions and Dr. Rubin did not list the bates stamp in his report,
23  however Finjan provides no authority that bates stamp information is required for the identification of
24  items identified as prior art.

25    3. *'494 Patent*

26  In his report Dr. Rubin states "NAV 4.0 discloses using a database to log detections. For
27  instance, the following displays the structured data surrounding detections that is included in the log."
28  After this text, Dr. Rubin's report cites to a "NAV 4.0 Reference Guide" with a screen shot of an

10

"Activity Log" that appears to be from the guide. (Dkt. No. 312-14 at 84 ¶ 1397.)

Finjan argues Dr. Rubin's opinion regarding the practicing of a database manager by NAV 4.0 should be stricken because: (1) Symantec did not disclose an "Activity Log" for the database manager element of Claim 10 for the '494 patent in its invalidity contentions and (2) Symantec did not produce the document Dr. Rubin relies on until June 15, 2017.

Symantec argues the prior art identified in its invalidity contentions and expanded upon in Dr. Rubin's report described many systems that created reports of viruses that infected client computers and these reports are essentially the "Activity Log." In particular, the Activity Log referenced in Dr. Rubin's report consists of a list of entries that identify certain files infected with a particular virus. (Dkt. No. 312-14 at 84 ¶ 1397.) Symantec insists that this listing is the same thing as reporting a virus to a user – that the Activity Log is nothing other than "reporting." The Court agrees: reporting a virus and an activity log is part of the same theory - the log is how the virus activity is reported to the user. Finjan's argument that storing an activity log is different from reporting a virus is an argument as to whether Symantec's theory is sufficient to support their obviousness argument, not an argument to strike it from Symantec's expert report.

Finjan also argues that Symantec violated Patent Local Rule 3-4(b) because it did not produce the manual Dr. Rubin relies on until June 15, 2017. Finjan does not provide any evidence to support this argument. Symantec counters that it produced the manual in the June 8, 2015 production. Finjan does not dispute this, but instead argues that Symantec failed to comply with the Local Rules because it never identified the manual by bates number. As discussed above, Finjan's argument is not supported by any authority and the Court declines to strike the manual on this ground.

Accordingly, the Court DENIES Finjan's request to strike Dr. Rubin's theory regarding the "Activity Log" for NAV 4.0.

**D.  Undisclosed Invalidity Theory – Written Description and Indefiniteness**

Finjan argues that Drs. Rubin and Stubblebine assert for the first time in their reports that the Claims of the '289, '182, and '996 patents are invalid under 35 U.S.C. § 112 based on lack of written description and indefiniteness. Finjan insists these indefiniteness invalidity theories should be stricken as they were not disclosed in Symantec's invalidity contentions as required by

11

Patent Local Rule 3-3(d).

Finjan concedes in its reply brief that its indefiniteness arguments as to the '182, '996, and '844 patents are moot. (Dkt. No. 323-4 at 18:21-23.) Symantec agreed not to raise these arguments because the cited sections of the reports relate to written description or enablement, not indefiniteness. (Dkt. No. 313-3 at 28:14-28.) Therefore, the Court shall proceed to address Finjan's two remaining written description arguments: "input modifier" and "security computer" for the '289 patent.

1. *"Input Modifier"*

Finjan argues that Symantec alleges for the first time in Dr. Rubin's report that the following term of the '289 Patent renders claims invalid for lack of written description:

> "**an input modifier** for modifying the input if the input itself includes a call to a second original function with a second input by replacing the call to the second original function with a corresponding call to a second substitute function, **the second substitute function being operational to send the second input to the security computer for inspections.**"

(Dkt. No. 302-10 ¶ 2235.)

Finjan is incorrect. Symantec's invalidity contentions state:

> "The asserted claims of the '289 patent contain a number of phrases that are unsupported by the written description of the '289 patent. For example, the '289 patent does not contain an adequate written description of "a call to an original function, and the call **including an input**." As another example, the '289 patent does not contain an adequate written description of "the substitute function being operation to send the input to a security computer for inspections" or **"the second substitute function being operational to send the second input to the security computer for inspections."**

(Dkt. No. 312-6 at 41.)

Finjan replies that the element discussed in Symantec's invalidity contentions is different from Dr. Rubin's theory because Dr. Rubin's argument is specific to the "input modifier for modifying the input if the input itself includes a call to a second function" element and not the "second substitute function." However, as reflected in highlighted language above, the "second substitution function" language is cited in both Dr. Rubin's report and Symantec's invalidity contentions. Further, it is unclear how the term "input modifier" renders Dr. Rubin's opinion an entirely new theory and thus improper when the term "input" is discussed throughout this section of

12

Symantec's invalidity contentions. Finjan's request to strike the "input modifier" theory in Dr. Rubin's report is DENIED.

2. *"Security Computer"*

Finjan argues that Dr. Rubin's report asserts for the first time that the '289 patent is invalid due to the indefiniteness of the term "security computer." (Dkt. No. 302-10 ¶¶ 2241-2242.) The Court agrees. Such theory does not appear in Symantec's invalidity contentions. (Dkt. No. 312-6 at 41-44.) Symantec insists that the Patent Local Rules merely require it to identify the claims it is challenging as indefinite and that it does not need to give the reasons why. Not so. *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.,* No. 14-CV-00876-RS(JSC), 2017 WL 5257001, at *4 (N.D. Cal. Nov. 13, 2017). Dr. Rubin's indefiniteness theory with regard to "security computer" is stricken.

## II. Motions to File Under Seal

Finjan seeks to file under seal portions of its motion to strike and reply brief, as well as the Lee, Medvidovic, and Kastens declarations. (Dkt. Nos. 302 at 2, 323 at 2.) Finjan also moves to file under seal in their entirety Exhibits 5, 6, 7, and 11 to the Kastens declaration in support of its motion to strike and Exhibits 2, 4, and 6 to the Kasten's declaration in support of its reply brief. (*Id.*) Symantec moves to file under seal redacted portions of its opposition brief, the Manel, Okada, and Shumway declarations, and Exhibits 2, 4, 6, and 12. (Dkt. No. 313 at 1-2.) Given the confidential business information in these documents and the competitive harm that could result from the disclosure of this confidential information the Court concludes that sealing is warranted and GRANTS both Symantec's and Finjan's motions. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978); *Music Grp. Macao Commercial Offshore Ltd. v. Foote*, 2015 WL 3993147, at *7 (N.D. Cal. Jun. 30, 2015).

## CONCLUSION

For the reasons described above, the Court GRANTS in part and DENIES in part Finjan's motion to strike Symantec's expert reports.

The Court GRANTS Finjan's request to strike the following items from Dr. Rubin's report:

13

1. Table 1 of the Islam Reference,
2. The NAV 4.0 theory in regards to requesting users to submit infected files to Symantec, by mail or otherwise, and
3. "Security computer" indefiniteness in relation to the '289 patent.

Finjan's request to strike the remaining sections in Dr. Rubin's report is DENIED. The Court GRANTS Finjan's and Symantec's motions to file under seal.

This Order disposes of Docket Nos. 302, 303, 313, 323.

**IT IS SO ORDERED.**

Dated: January 29, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge